No. 57,577

STATE OF KANSAS, *Appellant*, v. ROBERT HUNINGHAKE, *Appellee*.

(708 P.2d 529)

Opinion filed October 25, 1985.

*Michael K. Schmitt*, special prosecutor, of Hiawatha, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the briefs for appellant.

*John C. Humpage*, of Humpage, Berger and Hoffman, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: By interlocutory appeal (K.S.A. 22-3603) the State challenges a ruling by the district court suppressing the admission into evidence of the results of a breath test. The district court determined that neither the officer who had collected the breath sample nor the breath collection device were certified pursuant to K.A.R. 28-32-1.

On September 8, 1984, at approximately 12:05 a.m., Kansas Highway Patrolman Ronald D. Alvord observed the defendant's automobile approaching at a high rate of speed. Alvord's radar unit registered the speed of the oncoming vehicle at 100 m.p.h. The trooper pursued the speeding vehicle approximately 13

miles. Trooper Alvord finally stopped the fleeing vehicle by intentionally colliding with it.

The trooper ordered the two occupants out of the vehicle. Alvord observed that the driver, Huninghake, appeared unsteady on his feet and had an odor of alcohol about his person. Defendant Huninghake was requested to submit to a breath test to determine the alcoholic content of his blood pursuant to the provisions of K.S.A. 8-1001 *et seq.* The breath sample was then taken by Officer Alvord. Alvord used a Gas Chromatograph Intoximeter Field Breath Indium Encapsulation System, also referred to as a "crimper box," to obtain the sample.

Trooper Alvord was not certified pursuant to any regulations of the State Board of Health. He had received some training in use of the box as an officer of the patrol. The crimper box *itself* was not certified although there was some evidence to indicate it had been inspected by the Department of Health in 1983, but had not been checked since.

The breath sample, once drawn, was sent to the Kansas Highway Patrol laboratory in Topeka where it was analyzed by a person certified by the Kansas State Board of Health using a gas chromatograph system known as Intoximeter Mark IV, which was also certified by the Kansas State Board of Health. The analysis of the breath sample showed a blood alcohol level of 0.19 per cent.

Prior to trial Huninghake moved to suppress all physical evidence obtained as a result of his arrest, including the evidence obtained as a result of the breath test. The trial court granted the motion to suppress because neither the officer taking the breath sample nor the apparatus used to collect it were certified. The State filed an interlocutory appeal pursuant to K.S.A. 22-3603.

The defendant contends that this court does not have jurisdiction to hear the interlocutory appeal and that this court should dismiss the appeal. The State argues that the district court made an order suppressing evidence which is essential to its case and it, therefore, is entitled to an interlocutory appeal.

In *State v. Newman,* 235 Kan. 29, 680 P.2d 257 (1984), this court interpreted the term "suppressing evidence" as used in 22-3603 to have a broader meaning than the suppression of evidence which is illegally obtained. This court stated that

interlocutory appeals by the State under the statute included not only "constitutional suppression" but also rulings of a trial court which exclude State's evidence so as to substantially impair the State's ability to prosecute the case. 235 Kan. at 34. Suppression rulings which seriously impede, although they do not technically foreclose, prosecution can be appealed under K.S.A. 22-3603.

In the present case, without admission of the blood alcohol test results, the State's only evidence is that Huninghake was driving at a high rate of speed and refused to stop until the officer forced him off the road, that the officer smelled alcohol on the defendant's breath, and that the officer observed that Huninghake was unsteady on his feet after he got out of his car. The State would be denied the presumption provided by K.S.A. 8-1005(a) that a blood alcohol level greater than 0.1 percent is prima facie evidence that the defendant was under the influence of alcohol.

The suppression of evidence which denies the State the introduction of blood alcohol test results and the statutory presumption of K.S.A. 8-1005(a) does substantially impair the State's case. This court, therefore, has jurisdiction to hear this appeal.

The defendant contends that state law requires that both the officer taking the breath sample and the equipment used in taking the sample be certified annually by the Secretary of Health and Environment. The State argues that the statutes and regulations concerning certification apply only to those persons actually analyzing the sample and the equipment actually used in analyzing the breath sample, not the trooper and the device he used to collect the sample.

K.S.A. 65-1,107(c) and (d) authorize the Secretary of Health and Environment to promulgate rules and regulations governing:

"(c) the procedures, qualifications of personnel and standards of performance in the testing of human breath for law enforcement purposes, including procedures for the periodic inspection of apparatus, equipment and devices approved by the advisory commission for the testing of human breath for law enforcement purposes; and (d) prescribe the requirements for the training, certification and periodic testing of persons who operate apparatus, equipment or devices for the testing of human breath for law enforcement purposes."

Based on the above statute, the Secretary of Health and Environment promulgated K.A.R. 28-32-1 *et seq.* Briefly summarized, the regulations require initial inspection of the testing machine for accuracy with yearly testing and certification thereafter, and

initial training of operators with periodic proficiency testing and yearly certification. The regulations also require that breath testing machines be operated strictly in accordance with the manufacturer's operational manual.

The Highway Patrol initiated a program for testing human breath for blood alcohol content by use of the gas chromatograph and remote breath sample collection. The testing device itself is a gas chromatograph. Seven of these machines are in use throughout the state by the Patrol, and are operated only by trained, tested and licensed or certified personnel of the Patrol. A specimen gathering system, known as the "Indium Encapsulation System," permits remote gathering of human breath samples by troopers and police officers. The system consists essentially of a small box, known as a crimper box, and a soft metal tube made of indium in which the breath sample itself is captured. The box is equipped with a manually operated crimping device, or jaws, and a thermostatically controlled heater. To take a sample of breath, the small indium tube is inserted in the box in a channel designed to secure the tube, and the heater is activated to heat the tube sufficiently to prevent the condensation of moisture therein. When the necessary temperature is reached, a small red light indicates that fact. The suspect is instructed to expel breath into the tube, and while breath is passing through it, the trooper manually closes the crimper jaws, capturing the breath sample in three separate segments of the tube, which are sealed by the crimper jaws. The tube containing the sample is then forwarded for testing by licensed operators using tested and certified gas chromatography devices located regionally throughout the state. See Att'y Gen. Op. No. 78-121.

This court has never considered whether taking the breath sample was an inherent part of the testing process. At least two other courts have treated the breath sampling as a separate process from the actual testing.

In *State v. Tiernan*, 206 N.W.2d 898 (Iowa 1973), the Iowa court held that taking the sample was a separate procedure from actually running the test on the sample. The court noted that the device used by the officer is extremely simple in conception and operation. Its operation is almost exclusively mechanical.

The defendant in *State v. Burack*, 133 Vt. 482, 346 A.2d 192 (1975), claimed that the results of a blood alcohol test should be

excluded because no proper foundation was introduced to show that the officer collecting the breath sample was certified to operate the crimper. The Vermont court determined that the crimper was not an analyzing device, but merely collected the breath sample for transmission and later laboratory analysis; the crimper was not a testing machine; and the test was performed by another person operating a chromatograph.

K.S.A. 65-1,107 states that regulations and procedures should be promulgated for the testing of human breath and for those persons who operate the apparatus for the testing of human breath. The question is whether the taking of a sample is part of the testing procedure.

Since taking the breath sample by use of the Indium Encapsulation System is merely a simple mechanical process and law enforcement personnel are provided with instructions as to how to take the sample, it is not necessary that they should be certified each year to take such a sample. It was not the intent of the legislature nor the Secretary of Health and Environment when promulgating the rules and regulations governing certification and periodic testing under K.S.A. 65-1,107(c) and (d) and K.A.R. 28-32-5 to require law enforcement officers collecting breath samples by use of the crimper box to be certified. Any question as to whether the officer collecting the breath sample by use of the crimper box followed the procedure furnished by the manufacturer is a question of foundation for the admission of evidence as to the collection procedure.

The appeal is sustained and the case remanded to the district court for further proceedings.