No. 58,164

STATE OF KANSAS, *Appellee,* v. LARRY K. MUNYON, *Appellant.*

(726 P.2d 1333)

Opinion filed October 31, 1986.

*Craig D. Cox,* of Halstead, argued the cause and was on the brief for the appellant.

*Michael E. Cleary,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal by the defendant, Larry K. Munyon, from a jury conviction of aggravated indecent liberties with a child (K.S.A. 1983 Supp. 21-3504). Following his conviction, defendant was sentenced to prison for a term of five to twenty years.

The facts in the case were not greatly in dispute and essentially are as follows: The defendant, Larry K. Munyon, was the father of L.M., age 11. In January of 1984, defendant's ex-wife, Suzanne Munyon, moved to Wichita where she lived with a friend, S.M. L.M. was taking some special education classes in the Newton schools and resided in Newton with her father. It was during this period that the State's evidence showed defendant engaged in acts of sexual abuse toward his child. L.M. took

the stand and testified that the defendant had tied her to a bed and committed certain acts of sexual abuse on her including the fondling of her genitals and her fondling his genitals. The child testified that finally in January of 1984 she went to a friend and neighbor and told her about the sexual abuse. The neighbor discussed the matter with her family, and it was reported to the Newton police department. The incident was referred to a licensed clinical social worker in her capacity as an employee of the Harvey County office of social and rehabilitation services on January 8, 1984. The child was interviewed and counseled by the social worker and later by a physician. The physician testified at the trial that she examined the child and concluded that, because of the condition of the child's sexual organs, she had been sexually assaulted. Another licensed clinical social worker employed by the State counseled with the child about sexual abuse by her father. At the trial, that witness testified that the child had told her that her father had sexually abused her and further testified as to the psychological, emotional, and family factors involved where there is sexual abuse of a child. She observed that the child's sexual abuse by her father fit into the typical pattern of parental sex abuse of a child. She testified that she believed the child had been sexually abused and based her opinion on the psychological and emotional difficulties that L.M. was experiencing, the method and manner in which the child talked about her father, and from her own evaluation of certain cartoons which were drawn by the child to illustrate her relations with the defendant.

The defendant's ex-wife, Suzanne, testified that prior to January 1984, she and the defendant were divorced and that the child was living with the defendant in Newton. She testified that defendant called her in January 1984, and informed her that the child had been picked up by the police and had accused him of sexual abuse. Suzanne testified that the defendant told her that he had let the child touch his sexual organs and that he had done it for sex education purposes. The defendant denied that he had ever abused the child. Other witnesses were called and testified that the child had told them that her father had sexually abused her.

The record discloses that in January of 1984, a Child in Need of Care case was filed pursuant to K.S.A. 1983 Supp. 38-1501 *et*

*seq.* in the district court of Harvey County. As the result of that case, the child was removed from the defendant's home. That proceeding was subsequently dismissed on April 2, 1984. The present criminal case was filed on June 15, 1984. The State's evidence thus consisted basically of the testimony of the child as to the sexual abuse by the defendant, the testimony of the mother that the defendant had admitted that he had let the child touch his genitals for sex education purposes, and the testimony of expert witnesses that the child demonstrated all of the usual symptoms of sexual abuse.

The defendant did not take the stand. Defense counsel cross-examined the various witnesses and, in addition, offered testimony of the principal and teachers at the child's school that they had never seen any signs indicating sexual abuse or that the child had any problems with her father. The defendant also offered several witnesses who attacked the credibility of S.M., the friend of the child's mother.

During the trial but out of the hearing of the jury, defendant called Dr. Marvin Parrish, a clinical psychologist, as a witness to testify regarding his prior psychological counseling with defendant, his ex-wife, and the child during the existence of the marriage relationship. Dr. Parrish had been engaged in family counseling with the whole family, conducting independent interviews with the three participants individually and also together. Dr. Parrish was concerned as to the psychologist-client privilege and the admissibility of his testimony as to prior psychological counseling with the child and with her mother. A hearing was held outside the presence of the jury as to the scope of Dr. Parrish's testimony and limitations imposed upon it by reason of the psychologist-client privilege. Specifically, counsel for defendant sought a ruling from the trial court that the psychologist-client privilege between Dr. Parrish and the child and Suzanne Munyon had been waived.

In the course of her testimony, Suzanne Munyon had testified that she had received marriage and psychological counseling from Dr. Parrish during the marriage relationship but at a time prior to the alleged indecent liberties. It is also clear that all of the counseling which Dr. Parrish did with the family was carried out while the parties were together as a family and prior to the alleged indecent liberties charged in this case. The trial court

ruled that the psychologist-client privilege had not been waived and Dr. Parrish restricted his testimony accordingly. The case was submitted to the jury which found the defendant guilty as charged. The defendant filed a timely appeal to the Supreme Court.

The first issue which the defendant raises on the appeal is whether the trial court erred in holding that the psychologist-client privilege had not been waived with regard to the testimony of defense witness, Dr. Marvin Parrish, about his psychological counseling with the child and her mother, Suzanne. Defense counsel at the trial maintained that the privilege had been waived on the basis that Suzanne Munyon had mentioned counseling with Dr. Parrish on cross-examination and redirect examination and, furthermore, that the privilege had been waived as to the child as the result of the State's placing the child's mental condition in issue. The district court found that neither the mother or the child had waived any psychologist-client privilege which might exist. The court based its findings upon the fact that neither the child nor her mother, in their testimony, had discussed any privileged communication between themselves and Dr. Parrish, and, further, that the State could not by calling its expert witnesses to testify waive any privilege belonging to the child and her mother as it related to Dr. Parrish.

Before turning to the issue at law presented, we should note that Dr. Parrish did testify on behalf of the defendant before the jury and, in essence, stated that he had counseled professionally with the members of the Munyon family. Although Dr. Parrish did not give specific facts which he learned from the child and Suzanne in the course of the counseling, he did give his professional opinion that he had serious doubts whether the defendant had sexually abused his daughter. He further testified that at the time he counseled the family he did not see any clinical indicators that the defendant had sexually abused the child.

In determining whether or not the psychologist-client privilege had been waived under these circumstances, it would be helpful to consider the Kansas statutes on the subject and the applicable Kansas cases.

Prior to 1967, there was no specific statute granting a confidential relationship between a certified psychologist and his

client so as to make professional communications privileged. In 1967, the legislature enacted the certification of psychologists act (K.S.A. 74-5301 *et seq.*) which provided for the certification and registration of psychologists. K.S.A. 74-5323 made communications between a psychologist and his client a privileged communication. K.S.A. 74-5323 provides:

"**74-5323. Privileged communication.** The confidential relations and communications between a certified psychologist and his client are placed on the same basis as provided by law for those between an attorney and his client. Nothing in this act shall be construed to require such privileged communications to be disclosed."

The attorney-client privilege is codified at K.S.A. 60-426, which provides as follows:

"**60-426. Lawyer-client privilege.** (a) *General rule.* Subject to K.S.A. 60-437, and except as otherwise provided by subsection (b) of this section communications found by the judge to have been between lawyer and his or her client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege (1) if he or she is the witness to refuse to disclose any such communication, and (2) to prevent his or her lawyer from disclosing it, and (3) to prevent any other witness from disclosing such communication if it came to the knowledge of such witness (i) in the course of its transmittal between the client and the lawyer, or (ii) in a manner not reasonably to be aniticipated by the client, or (iii) as a result of a breach of the lawyer-client relationship. The privilege may be claimed by the client in person or by his or her lawyer, or if an incapacitated person, by either his or her guardian or conservator, or if deceased, by his or her personal representative.

"(b) *Exceptions.* Such privileges shall not extend (1) to a communication if the judge finds that sufficient evidence, aside from the communication, has been introduced to warrant a finding that the legal service was sought or obtained in order to enable or aid the commission or planning of a crime or a tort, or (2) to a communication relevant to an issue between parties all of whom claim through the client, regardless of whether the respective claims are by testate or intestate succession or by *inter vivos* transaction, or (3) to a communication relevant to an issue of breach of duty by the lawyer to his or her client, or by the client to his or her lawyer, or (4) to a communication relevant to an issue concerning an attested document of which the lawyer is an attesting witness, or (5) to a communication relevant to a matter of common interest between two or more clients if made by any of them to a lawyer whom they have retained in common when offered in an action between any of such clients.

"(c) *Definitions.* As used in this section (1) 'client' means a person or corporation or other association that, directly or through an authorized representative, consults a lawyer or lawyer's representative for the purpose of retaining the lawyer or securing legal service or advice from the lawyer in his or her professional capacity; and includes an incapacitated person who, or whose guardian on behalf of the incapacitated person so consults the lawyer or the lawyer's representative in behalf of the incapacitated person; (2) 'communication' includes

advice given by the lawyer in the course of representing the client and includes disclosures of the client to a representative, associate or employee of the lawyer incidental to the professional relationship; (3) 'lawyer' means a person authorized, or reasonably believed by the client to be authorized to practice law in any state or nation the law of which recognizes a privilege against disclosure of confidential communications between client and lawyer."

A good discussion of the lawyer-client privilege is presented in *State v. Maxwell,* 10 Kan. App. 2d 62, 691 P.2d 1316 (1984), where the following language may be found:

"K.S.A. 60-426 sets forth the attorney-client privilege and the exceptions thereto. The general rule may be summarized as follows: (1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived. See 8 Wigmore on Evidence § 2292 (McNaughton rev. 1961).

"The rule has always been that communications between attorney and client are privileged when made in professional confidence. Communications not made in such confidence are not so privileged." 10 Kan. App. 2d at 63.

An excellent discussion of the psychotherapist-patient privilege and its application in subsequent criminal proceedings may be found at Annot., 44 A.L.R.3d 24, §§ 3 and 28. It is stated that the purpose of the privilege is to assure the patient that disclosure of all intimate details of his life to his psychotherapist will not be disclosed to the public at large, to the patient's embarrassment, and so encourage the patient to relate to his psychotherapist all details essential for the psychotherapist's effective diagnosis and treatment of the patient's mental and emotional problems.

The defendant contends that the trial court erred in ruling that the confidential relationship between Dr. Parrish and the child and her mother Suzanne had not been waived. Defendant first maintains that the privilege was waived in the prior Child in Need of Care case. In his brief, counsel relies on K.S.A. 38-719 which made medical or psychological reports or facts relating to the condition of the child who is the subject of the case admissible and states that such evidence shall not be excluded on the ground that the matter is or may be the subject of a physician-patient privilege or similar privilege or on some other rule against disclosure. K.S.A. 38-719 was a part of the Kansas Child Protection Act enacted in 1965. The act provided for the reporting of physical or mental abuse or neglect of children to the

district court or to the department of social and rehabilitation services. The child was then to be examined and a report prepared stating the nature and extent of the child's injuries and any other helpful information. Upon receiving such report the district judge was required to report the matter promptly to the department of social and rehabilitative services which was to initiate an investigation. If the circumstances indicated a reasonable belief that the child's life or health was in danger, a peace officer was to take the child into custody.

All of the provisions of the Kansas Child Protection Act, including K.S.A. 38-719, were repealed by the 1982 legislature effective January 1, 1983. Thus, the act was not in effect when a Child in Need of Care case was filed in January 1984. At that time, the Kansas Code for Care of Children had been enacted and was effective. This code may be found at K.S.A. 1985 Supp. 38-1501 *et seq.* The new Kansas code expanded the earlier code and provided for prompt reporting of child abuse and neglect and a proceeding to protect the child. The obligation of protecting children and to prepare and file a petition alleging a Child in Need of Care was placed on the county or district attorney under K.S.A. 1985 Supp. 38-1510.

Under K.S.A. 1985 Supp. 38-1514, the district court is given the power to order an evaluation and a written report of the physical or emotional development or needs of the child who is the subject of the proceeding. The child may be referred to a state institution for evaluation. The child may also be referred to a mental health and diagnosis center for an evaluation. K.S.A. 1985 Supp. 38-1514(a)(1) also provides that a parent of a child shall have the right to obtain an independent evaluation at the parent's expense. During proceedings under the code, the court may order a medical examination and report of the child who is the subject of the proceeding. The court may also order a report from any physician attending the child stating the condition, the diagnosis, and the treatment afforded the child.

The confidentiality of the reports and of examinations ordered by the district court is covered by K.S.A. 1985 Supp. 38-1514(c)(1), (2), which provides:

"(c) *Confidentiality of reports.* (1) *Reports of court ordered examination or evaluation.* No confidential relationship of physician and patient, psychologist and client or social worker and client shall arise *from an examination or evaluation ordered by the court.*

"(2) *Report from private physician, psychologist or therapist.* When any interested party to proceedings under this code wishes the court to have the benefit of information or opinion from a physician, psychologist or social worker with whom there is a confidential relationship, the interested party may waive the confidential relationship but restrict the information to be furnished or testimony to be given to those matters material to the issues before the court. If requested, the court may make an *in camera* examination of the proposed witness or the file of the proposed witness and excise any matters that are not material to the issues before the court.

"**History:** L. 1982, ch. 182, § 14; Jan. 1, 1983." (Emphasis supplied.)

It should be noted that K.S.A. 1985 Supp. 38-1514(c)(1) excludes any claim of a confidential relationship between a physician and patient, psychologist and client, or social worker and client as a result of an examination or evaluation *ordered by the court.* Subsection (c)(2), however, recognizes the continuing existence of a confidential relationship where there has been a prior examination or evaluation of an interested party by a private physician, psychologist, or therapist. In order to receive such testimony, the interested party must waive the confidential relationship or at least restrict the information to be furnished or the testimony to be given. The provisions of K.S.A. 1985 Supp. 38-1514 are important in this case because that statute makes it clear that the confidential relationship between a child or another interested party with a psychologist existing prior to the institution of a proceeding under the Kansas Code for Care of Children is fully protected. In the present case, the defendant's argument that the preexisting psychologist-client privilege was waived in a Child in Need of Care proceeding cannot be sustained.

The defendant next maintains that the psychologist-client privilege was waived during the criminal trial because the State placed into issue the physical, emotional, and mental condition of the child by using testimony of the psychologist and the licensed clinical social worker. In support of his position, the defendant relies on *State v. Cofer,* 187 Kan. 82, 353 P.2d 795 (1960). In *Cofer,* it was held in a case where the defendant was charged and convicted of rape and incest that it was error to exclude the testimony of a psychiatrist who was acquainted with the sixteen-year-old victim and her father, the defendant, on the ground that such testimony was privileged and, therefore, the psychiatrist was incompetent to testify. At the time *Cofer* was decided, G.S. 1949, 60-2805 provided that a physician was in-

competent to testify concerning any communication made to him by his patient without the consent of the patient, and that where a patient testified as to the communications, the privilege is waived, thereby rendering the physician a competent witnesses. The Supreme Court held that the privilege had been waived because it had never been asserted or claimed and because the doctor had a written authorization by the defendant and his wife as to matters concerning the family. The alleged victim in the case, the defendant's daughter, testified at the trial and never asserted or claimed any privilege. The Supreme Court held that, under those circumstances, the testimony should have been admitted.

In the present case, the defendant moved the court to waive the privilege on behalf of the child and her mother, Suzanne. The trial court ruled that it had no right to do so. We do not consider the *Cofer* case applicable here because the new psychologist-client privilege involved in this case is afforded the same protection as the attorney-client privilege. *Cofer* involved the physician-patient privilege.

We have considered the other reasons asserted by defense counsel that the privilege had been waived. We find them to be without merit. In this case, the defendant had the right to have his child examined on order of the court and in a Child in Need of Care proceeding. Furthermore, the defendant could have filed a motion for a psychological examination of the child as the complaining witness in the criminal case. In *State v. Gregg*, 226 Kan. 481, 602 P.2d 85 (1979), this court held, without equivocation, that a trial judge has the discretion to order a psychiatric examination of the complaining witness in a sex crime case if the defendant presents a compelling reason for such examination. In the present case, the State called to the stand two social workers and a psychologist to testify in regard to their interviews and counseling with the defendant's daughter. Under this court's decision in *State v. Gregg*, the defendant could have moved for a psychiatric examination of the child which the court would certainly have granted in view of the expert testimony to be offered by the State.

It is undisputed that in this case the confidential relationship between Dr. Parrish and the daughter took place during a time when the parties were living together in a family relationship

and before there was any charge of sexual abuse of the child by the defendant. The confidential relationship existing between Dr. Parrish and the parties at that time remained in effect and, although that confidential relationship could have been waived by the individuals involved, the trial court did not have the right to waive that confidential relationship without their consent. We hold that the trial court did not err in excluding, from the testimony of Dr. Marvin Parrish, the specific details of his psychological counseling with either Suzanne Munyon or the child.

We note that, in his testimony, Dr. Parrish was given full rein by the court to express his opinion that he had serious doubts and did not believe that the defendant had sexually abused his daughter. As noted above, all of the counseling by Dr. Parrish with the Munyon family occurred over a year prior to the incident in January 1984, which caused the child to complain about sexual abuse. It is questionable whether his communications with the Munyon family so many months prior to the child's complaint of January of 1984, would have had much relevance in the case. We find no error on the first point presented by the defendant.

The second point raised by defendant on the appeal is that the trial court erred in denying the defendant's motion for a new trial based on newly discovered evidence. At the hearing on this motion, the defendant offered the testimony of a number of witnesses who were of the opinion that testimony of the child and Suzanne Munyon was manipulated, threatened, and unlawfully influenced by S.M. so as to cause them to falsely accuse the defendant of sexually abusing his daughter. There was also testimony that another man who lived in the same apartment complex as the defendant and his daughter was accused by the child of having sexual relations with her. The thirty-four witnesses called by the defendant to support his motion based on newly discovered evidence tended to show that the friend of the family was a psychological sadist, a pathological liar, and a sociopath-psychopath. Dr. Parrish testified that S.M. had used the psychological principle of projection to accuse others of sexual abuse which she herself had committed. Stated simply, it was the position of the defendant that these witnesses established that the charge of sexual abuse by the defendant of his

daughter was a hoax dreamed up by S.M. to satisfy some psychological and uncontrollable forces in her mental makeup.

The trial judge who heard all this testimony overruled the motion for a new trial based on newly discovered evidence finding that the testimony presented was not of such materiality that it would likely have produced a different result upon a new trial. The court found that the newly discovered evidence could have been produced at the first trial. The court further found that the new evidence would not have produced a reasonable doubt as to the guilt of the defendant. The trial court also noted the evaluation summary from the Kansas Reception and Diagnostic Center in which the defendant stated voluntarily that he had allowed his daughter to touch his genitals because it was educational for her to know something about the male sex organs. He seemed to be convinced that this was fully legitimate behavior. We have considered the evidentiary record of the hearing on the motion for a new trial and concluded that, under the established principles of law pertaining to the subject, the trial court did not err in denying defendant's motion for a new trial.

The general principles governing the granting of a new trial based on newly discovered evidence are discussed in *State v. Hobson,* 237 Kan. 64, 66, 697 P.2d 1274 (1985), as follows:

"K.S.A. 22-3501(1) permits a district court to order a new trial on the ground of newly discovered evidence. The rules governing these motions were set forth in *State v. Johnson,* 222 Kan. 465, 565 P.2d 993 (1977):

" 'The granting of a new trial for newly discovered evidence is in the trial court's discretion. (*State v. Larkin,* 212 Kan. 158, 510 P.2d 123, *cert. den.* 414 U.S. 848, 38 L. Ed. 2d 95, 94 S. Ct. 134.) A new trial should not be granted on the ground of newly discovered evidence unless the evidence is of such materiality that it would be likely to produce a different result upon re-trial. (*State v. Hale,* 206 Kan. 521, 479 P.2d 902.) The credibility of the evidence offered in support of the motion is for the trial court's consideration. (*State v. Anderson,* 211 Kan. 148, 505 P.2d 691; *State v. Larkin,* [212 Kan. 158].) The burden of proof is on defendant to show the alleged newly discovered evidence could not with reasonable diligence have been produced at trial. (*State v. Lora,* 213 Kan. 184, 515 P.2d 1086; *State v. Arney,* 218 Kan. 369, 544 P.2d 334.) The appellate review of an order denying a new trial is limited to whether the trial court abused its discretion. (*State v. Campbell,* 207 Kan. 152, 483 P.2d 495; *State v. Anderson,* [211 Kan. 148].)' p. 471.

"These rules have been repeated by the court many times, most recently in *State v. Richard,* 235 Kan. 355, 363, 681 P.2d 612 (1984). In *Richard* we also stated '[a] new trial is not granted on the basis of newly discovered evidence which merely tends to impeach or discredit the testimony of a witness.' 235 Kan. at 363."

We cannot say that the trial court erred or abused its discretion in its rulings.

The judgment of the district court is affirmed.

SCHROEDER, C.J., concurs in the result.