No. 81,640

STATE OF KANSAS, *Appellant*, v. THOMAS A. BERBERICH, *Appellee*.

(978 P.2d 902)

Opinion filed April 16, 1999.

*James A. Brown*, assistant Shawnee County district attorney, argued the cause, and *Joan M. Hamilton*, Shawnee County district attorney/acting Osage County

attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellant.

*William K. Rork*, of Rork Law Office, of Topeka, argued the cause, and *Michael Gayoso*, legal intern, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is an interlocutory appeal by the State pursuant to K.S.A. 22-3603 from the trial court's order that statements made by defendant Thomas R. Berberich to Dr. Don Strong, a counselor, were privileged pursuant to K.S.A. 74-5323.

The issue is simple. The answer is complex. Dr. Strong was not a licensed counselor when the alleged statements by Berberich were made. By statute, confidential relations and communications between a *licensed* professional counselor and a counselor's clients are privileged. However, K.S.A. 1998 Supp. 65-5810 states such relations and communications are placed on the same basis as provided by law for those between an attorney and an attorney's client. The definition of a lawyer under K.S.A. 60-426(c) includes a person the client reasonably believes is authorized to practice law. Thus, the question before us is whether the legislature, by adopting 65-5810 and other statutes to be addressed later in this opinion, intended to grant a privilege concerning communications between a client and a person who the client reasonably believes is a person licensed as a professional counselor. When the communications took place in this case, the applicable statutes used the term "registered," which has been changed to "licensed." So far as this opinion is concerned, the words are used interchangeably and have the same basic meaning. Readers are cautioned that the parties and trial judge used the terms interchangeably. "Licensed" seems more descriptive and understandable, so "licensed" will be used throughout the opinion. See K.S.A. 1998 Supp. 65-5810.

John "Jack" Hanrahan, 12 years of age, was kidnapped from Topeka and subsequently murdered in May 1979. After an extensive search, his body was recovered from a creek in Osage County, Kansas. On January 24, 1989, after Berberich had been convicted of several felonies, his attorney, Eric Kjorlie, made arrangements with Dr. Strong to counsel Berberich. It is alleged that Berberich

admitted to Dr. Strong that he killed Hanrahan. Nearly 9 years later, on January 30, 1998, the State charged Berberich with kidnapping and first-degree murder in Osage County, Kansas.

A preliminary hearing was scheduled. The State and Berberich filed numerous motions, including an objection to Dr. Strong's testimony on the grounds of privilege. Berberich conceded Dr. Strong was neither a licensed counselor nor a licensed psychologist during the relevant period (January 1989), but became a licensed counselor from September 15, 1989, through September 30, 1993.

We must again caution readers that the parties and the trial judge refer to both "licensed counselor" and "licensed psychologist" throughout the record and briefs and specifically refer to statutes that apply solely to each. Dr. Strong became a licensed counselor on September 15, 1989. There is no indication he was ever "licensed" or applied for a license as a psychologist. His Masters degree and Ph.D. are in counseling. The trial judge and counsel cite to statutes concerning "licensed psychologists." It appears to us the applicable statutes are those applying to "licensed counselor." This is a distinction without a difference as far as this opinion is concerned because the applicable parts of the statutes are identical. It would have been helpful to the court if counsel had been more specific and also had used the statutory versions in effect in January 1989, rather than setting forth the current statutes.

The trial court heard the extended arguments of counsel on three different occasions. Counsel also submitted briefs. No witnesses testified. The trial court then held the communications between Berberich and Dr. Strong were privileged. He explained his opinion as follows:

"THE COURT: The issue of privileged communication between this defendant and Dr. Strong would appear to the Court to be a very fine line decision. The Court has generally reviewed the statutes pertaining to privilege as cited by both counsel as to privilege between licensed psychologists and as to privilege between attorney. Generally, the Court has reviewed the privileges set forth for doctors. With reference to the section covering privilege for lawyer/client, K.S.A. 60-426(a), this is a rather lengthy section of some three full paragraphs setting forth details of that privilege. The privileges found in the statute for doctors covers probably fifteen paragraphs. The Court notes that K.S.A. 74-5323 on privileged

communications between a licensed psychologist and the psychologist's client is five lines, very simple. 'Confidential relations and communications between a licensed psychologist and the psychologist's client are placed on the same basis as provided by law for those between the attorney and the attorney's client.' No other explanations. The Court believes that . . . this statute means to supplement the section covering attorneys 60-426 in its entirety. The Court does note that with privileges extended to doctors, the same wording as found in the lawyers privileges is contained, a doctor or physician is determined to be . . . someone not only licensed but who the patient—can be who the patient reasonably believes to be a licensed doctor or physician, and that's generally the provisions of K.S.A. 60-426 covering attorney privilege.

"The Court believes that the attorney privilege should be adopted in its entirety and in interpreting the statute at K.S.A. 74-5323, covering . . . licensed psychologists, and believes that the wording from the attorney section should be applied as to the patient's reasonable belief that he is dealing with a psychologist, licensed psychologist. The patient was referred there; he was in an emotional state; he needed help; he was in a mental facility, if I understand the evidence right; and his abilities to distinguish that he had a licensed psychologist would be nil from all that the Court can glean of arguments of both counsel. The Court believes that it must apply the wording from the privilege for attorneys in its entirety into this section the way it interprets the statute. In so doing, it would find that nothing in this act should be construed to require such privileged communications to be disclosed. And that would be the ruling of the Court in this matter."

### Later, the trial judge further commented:

"The State has pointed out to the Court that Dr. Strong was not on or about January 24, 1989, a licensed or registered professional counselor. He was so licensed or registered from September 15, 1989 through September 30, 1993, but he was not so registered on January 24, 1989, during a period of which the defendant sought Dr. Strong's services as a psychologist or counselor and had sessions between Dr. Strong and the defendant Thomas Berberich.

"The State has cited a Kansas statute, Kansas Statutes Annotated 74-5323 providing for privileged communications between a licensed psychologist and the psychologist's client. That section of the law is very short and simply reads that the confidential relations and communications between a licensed psychologist and the psychologist's client are placed on the same basis as provided by law for those between an attorney and the attorney's client. Nothing in this act shall be construed to require such a privileged communication to be disclosed, and that's the end of that section of the statute which requires the Court to consider then the section pertaining to lawyer/client privilege which the psychologist's privilege section refers to.

"The defendant has cited that Kansas Statutes Annotated 60-426 providing for lawyer/client privilege, and provides that communications found by a Judge to have been between a lawyer and his and her client in the course of that relation-

ship and in a professional confidence, are privileged. Under the exception found in that same section, part B—strike that, it's under part C, the definition of lawyer under part C of that lawyer/client privilege section, means a person authorized or reasonably believed by the client to be authorized to practice law. The facts in this case are, that while Dr. Strong was not licensed or registered on the date in question, he used the term 'doctor'; the defendant was referred to him and went to him seeking psychological help, the facts from both parties would indicate that. The facts indicate that Mr. Berberich was disturbed and upset and that all times, he felt that he was dealing with a doctor and someone qualified to treat him for psychological help.

"In applying the lawyer/client section of the law to the licensed psychologist section of the law, and the fact that that section does provide that the clients' privilege is on the same basis as provided by law for those between an attorney and the client. The Court has had to conclude that in fact, Mr. Berberich felt that he was dealing and believed in good faith, that he was dealing [with] a doctor who was competent to treat him for his psychological problems and that any communications therein between Mr. Berberich and that doctor, should be and are privileged communications."

The State filed an interlocutory appeal pursuant to K.S.A. 22-3603, raising as its sole issue on appeal "whether the court wrongfully suppressed the evidence of the defendant's confession to Dr. Strong by finding that the communications were privileged pursuant to K.S.A. 65-5810 or K.S.A. 74-5323." K.S.A. 1998 Supp. 65-5810 is applicable to a "licensed counselor" and K.S.A. 74-5323 is applicable to a "licensed psychologist."

Berberich challenges this court's jurisdiction on the theory the State has made no showing that its ability to prosecute the case would be substantially impaired as required before taking an interlocutory appeal. See *State v. Newman*, 235 Kan. 29, 34-35, 680 P.2d 257 (1984).

In *State v. Huninghake*, 238 Kan. 155, 157, 708 P.2d 529 (1985), the court elaborated on the definition of "substantially impairs" and held that "[s]uppression rulings which seriously impede, although they do not technically foreclose, prosecution can be appealed under K.S.A. 22-3603." The suppression of Dr. Strong's testimony at least substantially impairs or seriously impedes the State's ability to prosecute its case under the facts presented.

Berberich next argues that if his statements to Dr. Strong are considered confessions, the district court's ruling did not substan-

tially impair the State's ability to prosecute the case because an "uncorroborated extrajudicial confession is insufficient to sustain a conviction." *State v. Tillery*, 227 Kan. 342, Syl. ¶ 2, 606 P.2d 1031 (1980). In *Opper v. United States*, 348 U.S. 84, 90, 99 L. Ed. 101, 75 S. Ct. 158 (1954), the Court stated that "an accused's admissions of essential facts or elements of the crime, subsequent to the crime, are of the same character as confessions and that corroboration should be required." Therefore, the *Opper* Court found it necessary

"to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. Thus, the independent evidence serves a dual function. It tends to make the admission reliable, thus corroborating it while also establishing independently the other necessary elements of the offense. *Smith v. United States*, 348 U.S. 147 [ 99 L. Ed. 101, 75 S. Ct. 194 (1954)]." 348 U.S at 93.

The *Opper* Court, however, also noted that "[i]t is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth." 348 U.S at 93. Berberich argues that based on this principal of law, the State's case was not substantially impaired because an uncorroborated confession is not enough to support a conviction, and the State has conceded that its only evidence was Berberich's alleged confession to Dr. Strong.

Berberich accurately asserts that in a June 1998 motion, the State admitted that "there is no physical evidence directly against [Berberich]." In a July 1998 defense motion, Berberich notes that when a detective interviewed Dr. Strong in December 1996, Dr Strong had asked whether "the police had any other evidence other than the confession and the detective had [said]: 'No, not at this point.' " Thus, Berberich argues no evidence existed linking him "to the charges against him 19 years ago, or when previously investigated and a decision for filing of no charges was made in 1989. Since that decision not to file any charges against this accused, no new facts have come into play or existence."

Berberich maintains that at a minimum, the State should have proceeded with the evidence at the preliminary hearing, rather than seeking an interlocutory appeal. He asserts the State "had no choice but to seek an interlocutory appeal, because this was its only

remedy due to the fact this was its only evidence." He quotes the State's remark at the preliminary hearing that the judge's ruling "basically emasculates the State's case." Therefore, Berberich asks this court "to require the State to make a showing that the pretrial order of the district court appealed from substantially impairs the State's ability to prosecute the case."

The State's notice of appeal challenges not only a confession, but the suppression of evidence in the general sense. This notice of appeal is not limited to a confession, but includes any communication between Dr. Strong and Berberich, regardless of whether such a communication is deemed a confession. The district court's ruling to disallow Dr. Strong's testimony was clearly suppressed evidence and the State's notice of appeal challenges suppressed evidence. Therefore, this court does not lack jurisdiction based on the State's failure to appropriately challenge the district court's ruling.

Berberich's claim that the State cannot rely on an uncorroborated admission to convict him also fails. The uncorroborated admission argument applies to limiting a *conviction*. In the present case, the preliminary examination has not even been completed. Thus, the argument that the State's only evidence is an admission or a confession would not divest this court of jurisdiction at this stage in the proceedings.

## PRIVILEGED COMMUNICATIONS

"Interpretation of a statute is a question of law. An appellate court's review of a question of law is unlimited." *State v. Lewis*, 263 Kan. 843, Syl. ¶ 1, 953 P.2d 1016 (1998). The legislature has enacted statutes protecting certain communications between a client and the client's psychologist or counselor. The Professional Counselors Licensure Act (PCLA), K.S.A. 1998 Supp. 65-5801 *et seq.*, regulates the licensing and supervision of professional counselors, and the Licensure of Psychologists Act (LPA), K.S.A. 74-5301 *et seq.*, regulates the licensing and supervision of professional psychologists.

The State cites the definition of "confidential communications" under K.S.A. 1998 Supp. 65-5810. It provides that "[t]he confi-

dential relations and communications between a licensed professional counselor and such counselor's client are placed on the same basis as provided by law for those between an attorney and an attorney's client." The PCLA defines a licensed professional counselor as "a person who engages in the private practice of professional counseling and is licensed under this act." K.S.A. 1998 Supp. 65-5802(g).

The LPA protects "privileged communication" and provides that "[t]he confidential relations and communications between a licensed psychologist and the psychologist's client are placed on the same basis as provided by law for those between an attorney and the attorney's client. Nothing in this act shall be construed to require such privileged communications to be disclosed." K.S.A. 74-5323.

The State claims the trial court inappropriately enlarged the privilege statute for psychologists by including a person reasonably believed by a client to be a licensed psychologist. The trial court made its ruling based on its interpretation of K.S.A. 74-5323 and the reference in K.S.A. 74-5323 to the attorney-client privilege. K.S.A. 60-426, the attorney-client privilege statute, provides in pertinent part:

"(a) . . . [C]ommunications found by the judge to have been between lawyer and his or her client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege (1) if he or she is the witness to refuse to disclose any such communication, and (2) to prevent his or her lawyer from disclosing it, and (3) to prevent any other witness from disclosing such communication if it came to the knowledge of such witness (i) in the course of its transmittal between the client and the lawyer, or (ii) in a manner not reasonably to be anticipated by the client, or (iii) as a result of a breach of the lawyer-client relationship. The privilege may be claimed by the client in person or by his or her lawyer, or if an incapacitated person, by either his or her guardian or conservator, or if deceased, by his or her personal representative."

A "lawyer" is defined under the attorney-client privilege statute as "a person authorized, or reasonably believed by the client to be authorized to practice law in any state or nation the law of which recognizes a privilege against disclosure of confidential communications between client and lawyer." K.S.A. 60-426(c)(3).

As we see it, the question becomes whether the legislature, having granted a lawyer-client privilege in subparagraph (a) of K.S.A. 60-426, and defining a lawyer in subparagraph (c)(3) as "a person authorized, or reasonably believed by the client to be authorized to practice law," intended to include the definition section of the lawyer-client statute when it granted both a licensed counselor and a licensed psychologist a privilege on the same basis as provided by law for those between an attorney and a client. In other words, did the legislature intend that the privileges afforded a "licensed counselor" and a "licensed psychologist" should also include an unlicensed counselor or psychologist who a client reasonably believed was a licensed counselor or psychologist?

In adopting the physician-patient privilege, the legislature gave the communications between a physician and a patient far less protection than the communications between a lawyer and a client. Pursuant to K.S.A. 60-427(b), the physician-patient privilege applies only in civil actions and in misdemeanor criminal prosecutions. Also, among other exceptions, subsections (c) through (h) of K.S.A. 60-427 contain various exceptions to the physician-patient privilege.

We deem it of great significance that a psychiatrist comes under K.S.A. 60-427(b) and, thus, would not have a privilege in a felony case. There appears to be a privilege to patients of a treatment facility (K.S.A. 65-5601 *et seq.*) that would include any employee of a treatment facility. Thus, a psychiatrist's patients may have a privilege in felony cases in certain situations. It would seem inconsistent to grant a greater privilege to counselors and psychologists than the privilege given to a psychiatrist.

The physician-patient privilege statute defines "physician" as "a person licensed or reasonably believed by the patient to be licensed to practice medicine or one of the healing arts as defined in K.S.A. 65-2802 . . . in the state or jurisdiction in which the consultation or examination takes place." K.S.A. 60-427(a)(2).

The legislature clearly defined "lawyer" and "physician" to include a person reasonably believed by the patient or client to be licensed to practice his or her profession. The legislature did not do so in the statutes granting a privilege to a *licensed* professional

counselor, nor did it do so under the definition statute (K.S.A. 1998 Supp. 65-5802) which defines a "licensed professional counselor" as "a person who engages in the private practice of professional counseling and is licensed under this act."

The legislature, prior to adopting the "licensed counselor" and "licensed psychologist" privilege, had clearly demonstrated it knew how to expressly grant a privilege to a client who reasonably believed the person was licensed pursuant to the physician-patient and attorney-client privilege statutes. Did the legislature, by using different language, *i.e.*, "placed on the same basis as provided by law for those between an attorney and an attorney's client," (K.S.A. 1998 Supp. 65-5810) mean to define the parameters of the privilege (*i.e.*, what is covered by the privilege), or did the legislature also intend to define a "licensed counselor" (who is covered) as one a client reasonably believed to be licensed?

The purpose of the privilege is to encourage people to seek and receive treatment for problems society endeavors to improve. At the time the legislature adopted the acts regulating licensed professional counselors and licensed psychologists, it was attempting to regulate and establish minimum qualifications for counselors and psychologists. No reason existed to encourage clients to seek treatment from individuals who were not licensed.

The common law did not provide a privilege for physician-patient, psychologist-client, or counselor-client communications. This court has previously held the physician-patient "privilege, being in derogation of the common law, should be strictly construed, and should not be construed to apply to 'matters not coming clearly within its provisions.' *State v. Townsend*, 146 Kan. 982, 985, 73 P.2d 1124; and see, also, *Armstrong v. Street Railway Co.*, 93 Kan. 493, 503, 144 Pac. 847; and *Branch v. Wilkinson*, 198 Neb. 649, 256 N.W.2d 307, 312 (1977)." *State v. George*, 223 Kan. 507, 510, 575 P.2d 511 (1978). A party claiming a privilege has the burden of proof, *i.e.*, must show the privilege applies and establish the facts necessary to invoke it.

We acknowledge that the attorney-client privilege was recognized at common law; thus, it is not in derogation of common law and subject to strict scrutiny. However, in our view, K.S.A. 1998

Supp. 65-5810 first restricted the privilege to a *licensed* professional counselor and then defined the manner in which the privilege is to be applied to be in the same manner ("same basis") as provided by law for those between an attorney and a client. We hold that the privilege granted by K.S.A. 1998 Supp. 65-5810 extends only to licensed counselors and not to someone the client reasonably believes to be a licensed counselor.

Berberich asserts that the question of whether the Licensure of Psychologists Act incorporates the language of K.S.A. 60-426 in its entirety has been decided in *State v. Munyon*, 240 Kan. 53, 726 P.2d 1333 (1986). The *Munyon* defendant sought a ruling that the psychologist-client privilege between Dr. Parrish, Suzanne, his former wife, and their child had been waived because Suzanne mentioned counseling with Dr. Parrish on cross-examination and redirect examination. He further claimed waiver as to the child because the State had placed the child's mental condition in issue.

Before determining whether the psychologist-client privilege had been waived under the facts presented, the *Munyon* court examined the Kansas statutes and cases on privilege. The *Munyon* court stated that "in 1967, the legislature enacted the certification of psychologists act (K.S.A. 74-5301 *et seq.*) which provided for the certification and registration of psychologists. K.S.A. 74-5323 made communications between a psychologist and his client a privileged communication." 240 Kan. at 57. Pursuant to K.S.A. 74-5323 (Ensley), "[t]he confidential relations and communications between a certified psychologist and his client are placed on the same basis as provided by law for those between an attorney and his client. Nothing in this act shall be construed to require such privileged communications to be disclosed."

After reciting the statutory definition of privileged communication under K.S.A. 74-5323, the *Munyon* court immediately quoted the entire attorney-client privilege as codified at K.S.A. 60-426. Thus, Berberich argues that the *Munyon* court assumed that because confidential communications between a licensed psychologist and the psychologist's patient were placed on the same basis as those between an attorney and the attorney's client, the *entire* attorney-client statute pursuant to K.S.A. 60-426 was incorporated

into the psychologist-client statute. In *Munyon*, the psychologist was licensed and the case does not decide the issue before us.

We acknowledge that New Jersey, New York, Arizona, Arkansas, Georgia, Idaho, Montana, New Hampshire, Pennsylvania, and Tennessee have similar language ("on the same basis as provided by law between an attorney and the attorney's client") as the Kansas statute. Also, New York and New Jersey have cases and statutes that appear to incorporate the entire law on attorney-client into the privilege. See *Kinsella v. Kinsella*, 150 N.J. 276, 297-98, 696 A.2d 556 (1997); N.J. Stat. Ann. § 45:14B-28 (West 1995); *LeVien v. LaCorte*, 168 Misc. 2d 952, 954, 640 N.Y.S. 2d 728 (1996). We deem these cases and statutes of little help in solving the issue of what our legislature intended as these statutes do not have similar legislative history and related statutes granting privileges to other professions. None of the cited cases (and our research has not disclosed any) have resolved the exact issue before us.

A case that comes close to analyzing the issue before us is *State v. Gotfrey*, 598 P.2d 1325 (Utah 1979). Although the majority opinion does not discuss the issue with which we are confronted, the concurring and dissenting opinion make it clear that in Utah, by statute, " 'a licensed psychologist's relationship with his client or patient shall be accorded the same privileged communication as the relationship between an attorney and his client.' " 598 P.2d at 1331 (J. Stewart, concurring and dissenting). The *Gotfrey* defendant was convicted of rape and forcible sodomy of his stepchildren although the case was reversed and remanded for a new trial due to the misjoinder of three charges. Mr. Fredrickson, a clinical psychologist, testified that during a therapy session, Gotfrey volunteered that he had sexual intercourse with the two stepdaughters. Gotfrey's appeal claimed error on the basis of psychologist-client privilege. The Utah Supreme Court rejected that argument because the psychologist was not licensed. The Utah Supreme Court held:

"The assignment that the court committed error in refusing to allow the defendant to invoke a privilege between him and Mr. Fredrickson is based on our statute Sec. 58-25-8, U.C.A. 1953, which states:

'A psychologist *licensed* under the provisions of this act cannot, without the consent of his client or patient, be examined in a civil or criminal action as to any information acquired . . . in behalf of the client . . . .

"The effect of that statute is to create another privilege and thus close another window to the light of truth. It is neither our duty nor prerogative to pass upon the wisdom of such a legislative enactment. But because it has the effect just stated, it should be strictly construed and applied; and should not be extended to persons merely acting as agents for or under the direction of licensed psychologists, as defendant urges. Mr. Fredrickson's own testimony indicates that he had not become a licensed psychologist as required by Sec. 58-25-2, U.C.A. 1953. The trial court therefore acted properly in not allowing the defendant to claim the privilege." (Emphasis added.) 598 P.2d at 1327-28.

We agree with the rationale of the Utah court in *Gotfrey*.

Reversed and remanded.