NOT DESIGNATED FOR PUBLICATION

No. 116,249

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

ROBERT BRADLEY,
*Appellee.*

MEMORANDUM OPINION

Appeal from Geary District Court; STEVEN L. HORNBAKER, judge. Opinion filed March 24, 2017.
Affirmed.

*Tony Cruz*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Britain D. Stites*, assistant public defender, of North Central Regional Public Defender's Office,
of Junction City, for appellee.

Before MCANANY, P.J., MALONE, J., and STUTZMAN, S.J.

*Per Curiam*:  This is an interlocutory appeal by the State from an order of the
district court partially granting a motion to suppress marijuana seized in a search. Law
enforcement officers found the marijuana in a duffel bag located in a truck in which
Robert Bradley was a passenger. Upon review, we find no error and affirm.

FACTS AND PROCEDURAL BACKGROUND

Just before midnight on January 9, 2016, on Interstate 70 in Geary County,
Lieutenant Daniel Jackson of the Geary County Sheriff's Department stopped a Nissan

1

Frontier pickup fitted with a camper shell. Although he was wearing a body camera, Jackson did not activate it at any time. While Jackson talked to the driver, Lydell Sheegog, and the front seat passenger, Robert Bradley, he detected what he believed to be a strong odor of raw marijuana and saw what he thought was a marijuana cigarette in the handhold recess in the driver's door. Jackson called for backup, and four officers responded to the scene. In addition to Sheegog and Bradley, officers found the truck also was occupied by Robert Bobb, Sarah Cooley, and two dogs, all in the bed of the truck, where they were initially concealed from view by the camper shell.

The officers arrested Sheegog, who told them they would find between 1 ounce and 2 pounds of marijuana in the vehicle and that it belonged to all four of them. When requested, Bradley got out of the truck, and one of the officers saw a black glass pipe lying between the center console and Bradley's seat.

The officers took all four passengers, the truck, and the two dogs to the Geary County warehouse. The dogs remained in the truck bed while it was being towed. When the camper was opened for search, the dogs were observed eating marijuana from a gallon Ziploc bag officers had not noticed previously. Bradley told the officers that he knew Sheegog had a small amount of marijuana and would not be surprised if Bobb and Cooley had some as well. He also told the officers that of the items in the truck, he owned a red backpack and a sleeping bag. The officers found Bradley's backpack in the truck bed. Among other personal items and clothes the officers found in Bradley's backpack, there was a syringe with liquid THC. The officers photographed the syringe but not the other items in the backpack.

Further search of the truck bed produced two bags of marijuana hidden inside sleeping bags and blankets, a glass smoking pipe where Cooley had been lying, a grinder in a purse, and small baggies believed to contain marijuana. When the officers searched the cab of the truck more thoroughly, they found a green, military-style duffel bag behind

2

the driver's seat containing clothes and 494.22 grams of marijuana. The officers did not take the duffel bag into evidence with the marijuana, nor did they take any pictures of the bag's contents, repack the bag, or replace it in its original location. Also behind the driver's seat and underneath the duffel bag, the officers found a green and blue backpack with a checkbook belonging to Sheegog and a small baggie of marijuana. As with the duffel, the officers did not photograph or record the contents of any of the other luggage found in the truck. The search by the officers found 138.31 grams of marijuana in the backpack behind the driver's seat, 51.91 grams of marijuana in the truck bed, and 494.22 grams of marijuana in the duffel bag behind the driver's seat, on top of the backpack.

On January 14, 2016, the Geary County Attorney charged Bradley with possession of marijuana with intent to distribute, a drug severity level 2, nonperson felony; possessing a controlled substance without a drug tax stamp, a severity level 10, nonperson felony; possession of marijuana, a class A, nonperson misdemeanor; and possession of drug paraphernalia, a class A, nonperson misdemeanor. Following a preliminary hearing, Bradley entered not guilty pleas.

On April 1, 2016, one of Bradley's defense attorneys, with an investigator from the public defender's office, inspected the truck, still held at the Geary County warehouse. They observed the state of the truck had changed substantially from the photographs that the officers had taken. In the officers' photos, blankets and a tarp are visibly laid out near the tailgate inside the truck bed. When the attorney and investigator inspected the truck, however, the truck bed was filled to the top of the camper with items that were not mentioned in any law enforcement reports. They found a green duffel bag in the truck bed, but it was empty. There were clothes and other items strewn about the truck bed without any organization.

On June 16, 2016, Bradley filed a motion to dismiss and/or exclude evidence based on destroyed evidence. He argued that if the district court denied dismissal of the

3

charges, the court should suppress the marijuana found in the duffel bag because police failed to preserve evidence that would have shown the bag did not belong to him. Bradley also contended the bags of marijuana eaten by the dogs should be suppressed because the police, in bad faith, had left them in the truck, which allowed the dogs to alter the location of items that could have shown the marijuana did not belong to him.

The district court granted Bradley's motion to exclude, in part, by a memorandum and order entered on July 6, 2016. The judge determined that any clothing found inside the duffel bag would have been exculpatory because each person in the truck had his or her own luggage. The district court further found that the exculpatory nature of the clothing, and the State's failure to preserve it through any means, violated Bradley's due process rights, requiring suppression of the marijuana evidence found in the duffel bag.

Although not obligated to proceed with further analysis, the district judge also found the State acted in bad faith, since the exculpatory nature of the evidence was "so obvious." The court denied suppression of evidence found elsewhere in the truck as well as evidence eaten or moved by the dogs. The State timely filed its interlocutory appeal from the adverse ruling on Bradley's motion.

ANALYSIS

Bradley first disputes our jurisdiction to entertain the State's interlocutory appeal. He argues that even after the district court's suppression, the State had evidence on which to proceed. Therefore, its ability to prosecute him was not substantially impaired. In support of jurisdiction to consider its appeal, the State merely asserts "there is no question that the suppression substantially impairs the State's case."

We may entertain an interlocutory appeal by the State "'only where the pretrial order suppressing or excluding evidence places the State in a position where its ability to

4

prosecute the case is substantially impaired.'" *State v. Kuszmaul*, No. 110,694, 2014 WL 3024242, at *2 (Kan. App. 2014) (unpublished opinion) (quoting *State v. Newman*, 235 Kan. 29, 35, 680 P.2d 257 [1984]). Our Supreme Court has further explained that substantial impairment includes "'[s]uppression rulings which seriously impede, although they do not technically foreclose, prosecution.'" *State v. Berberich*, 267 Kan. 215, 220, 978 P.2d 902 (1999) (quoting *State v. Huninghake*, 238 Kan. 155, 157, 708 P.2d 529 [1985]).

The district court's suppression of the contraband from the duffel bag likely would raise a significant barrier for the State to overcome to convict Bradley on the most serious charge against him. Despite the State's bare, conclusory declaration, therefore, we find we have jurisdiction to consider the appeal.

We review the district court's decision to suppress the evidence using a bifurcated standard of review. Initially, we review the district court's findings of fact to determine whether they were supported by substantial competent evidence without reweighing the evidence or assessing the credibility of witnesses. We then consider the district court's ultimate legal conclusion de novo. See *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016) (reviewing scope of search warrant); *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014) (determining whether emergency aid exception applied to search of apartment); *State v. Gibson*, 299 Kan. 207, 215-16, 322 P.3d 389 (2014) (motion to suppress inculpatory statements).

The parties do not dispute any of the material facts the district court relied on in excluding the marijuana from the duffel bag. When the material facts related to the trial court's decision on a motion to suppress are not in dispute, we may move on to de novo review of the trial court's legal conclusion. *State v. Stevenson*, 299 Kan. 53, 57, 321 P.3d 754 (2014).

"The constitutional rights granted an accused under our state constitution are coextensive with those rights granted an accused under the United States Constitution." *State v. Finley*, 273 Kan. 237, 242, 42 P.3d 723 (2002) (citing *State v. Spain*, 269 Kan. 54, 59, 4 P.3d 621 [2000]). Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, "criminal prosecutions must comport with prevailing notions of fundamental fairness." *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984). Fairness requires that defendants be afforded a meaningful opportunity to present a complete defense. To present a complete defense, the defendant must receive whatever exculpatory evidence the State may have against him in order to protect the innocent from erroneous conviction. *Trombetta*, 467 U.S. at 485; *State v. Wilkins*, 269 Kan. 39, 42, 5 P.3d 520 (2000). This standard does not, however, impose an absolute duty for police to retain and preserve all material that might conceivably have evidentiary significance. *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988).

When the State fails to disclose "material[ly] exculpatory evidence," the defendant's due process rights under the Fourteenth Amendment to the United States Constitution are automatically violated. *Youngblood*, 488 U.S. at 57 (violation of the Due Process Clause of the Fourteenth Amendment as interpreted in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 [1963]); *Finley*, 273 Kan. at 241 (applying *Youngblood*). This court has discussed the components of that phrase in a *Brady* analysis:

> "Evidence is exculpatory if it tends to disprove a fact in issue that is material to guilt or punishment or if it may be used to impeach inculpatory evidence of the prosecution. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence of the outcome." *State v. Belone*, 51 Kan. App. 2d 179, Syl. ¶ 15, 343 P.3d 128, *rev. denied* 302 Kan. 1012 (2015).

6

Clothing has been used to determine who out of a group owned or exercised constructive control over an illegal item. See *United States v. Hammons*, 152 F.3d 1025, 1026-27 (8th Cir. 1998) (defendant was charged with possessing drugs found in a garment bag containing men's clothing, not his wife in whose name car was rented); *United States v. Pruitt*, No. 07-15484, 300 Fed. Appx. 853, 855 (11th Cir. 2008) (unpublished opinion) (there was sufficient evidence to conclude defendant constructively possessed the gun, in part because it was found in a bag containing men's clothing). Significant to this case, Lieutenant Jackson noted the height and weight of each person found in the truck. Sheegog is 6' 5" and weighs 175 lbs., Bradley is 6' 1" and weighs 220 lbs., Bobb is 6' 1" and weighs 200 lbs., and Cooley is a 5' 6" female weighing 140 lbs. The physical dissimilarities are apparent.

Jackson testified he found clothing in the duffel bag where he found over a pound of marijuana. That duffel bag was behind the driver's seat, on top of a backpack that contained a checkbook that belonged to the driver, Sheegog. Bradley told the officers that he had a sleeping bag and a red backpack, which they found in the bed of the truck, containing personal items and clothing, along with a syringe with liquid THC.

Bradley's defense, in part, was that he was not in possession of the marijuana in the duffel bag, which also contained clothes. Except for the marijuana, however, the officers did nothing to identify, document, or preserve the contents of the duffel. The location of the duffel bag and the backpack with Sheegog's checkbook—behind Sheegog's seat—while Bradley's backpack with clothing and personal items was found in the truck bed, highlights the significance of information about the *noncontraband* contents of the duffel.

As the district judge observed, finding female garments in the duffel, or clothing unsuited to Bradley's size, would have been of obvious exculpatory significance. The effect of the loss of that information, however, was as complete as if the items themselves

had been shredded. The district court found there was no body camera footage for a contemporaneous record of the search; there were no photographs of the items of luggage *in situ*, or of the contents the officers found in each; there was no detailed narrative in the reports; and the items were not returned to their original places after search. Of the multiple means to record the officer's findings in the necessary detail, ranging from high-technology body camera to pencil and paper, none was employed.

When defense counsel and an investigator went to view the truck, clothing and other items were in disarray in the truck bed, a duffel was found empty in the bed of the truck, and the bed contained a pile of items not mentioned in any reports. At that point, it was apparent that Bradley's opportunity for a defense based on distinguishing his possessions from those found with the bags of marijuana was lost with neither a contemporaneous record, nor any means for reconstruction.

Evidence effectively was destroyed by the officers. Once the identity of the items found in the truck, and where the items were found, was lost without record, there was no basis for recovery. That information unquestionably could have tended to disprove a fact in issue that is material to Bradley's guilt or punishment—whether he possessed the pound of marijuana in the duffel; therefore, it was exculpatory. The location of the duffel bag with respect to what reasonably appeared to be Sheegog's backpack and the known location of Bradley's backpack with clothing and other items, raises a probability sufficient to undermine confidence in the outcome of this case. The exculpatory evidence was material.

The State contends Bradley lost nothing because he could cross-examine the officers about the contents of the duffel bag at trial. That opportunity is without meaning when the officers have no basis for providing a response.

The district court found that the effective destruction of the evidence, through failure to preserve it, denied Bradley's due process right to present a complete defense. We agree. The undisputed facts support the district court's conclusion that Bradley was deprived of material exculpatory evidence. In light of our finding, we need not consider the district court's additional ruling on bad faith.

Affirmed.