No. 80,881

STATE OF KANSAS, *Appellee*, v. LARRY D. WILKINS, *Appellant*.

(5 P.3d 520)

Opinion filed April 21, 2000.

*William F. Dunn*, of Kansas City, argued the cause, and was on the brief for appellant.

*Terra D. Morehead*, assistant district attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Larry D. Wilkins appeals his first-degree murder conviction in the drive-by shooting death of Frederick Estes. He claims (1) the State failed to disclose its deal with a key prosecution witness and (2) the State implied through its cross-examination that the key prosecution witness had been intimidated by the defend-

ant. We conclude that there is no evidence supporting the defendant's first assertion, that his failure to object to the questioned cross-examination is fatal to his second claim, and affirm.

On December 4, 1998, the defendant Larry D. Wilkins and two friends, Michael Griffin and Gregory Moore, were driving down Haskell Avenue in Kansas City, Kansas, in a blue pickup truck. Griffin was driving, Moore was seated in the middle, and the defendant was seated next to the passenger side door. They were taking Moore to his house. During this trip, a green Chevrolet Impala in which the victim was a passenger pulled out in front of Griffin.

Griffin gave a statement to police detailing what next occurred. According to Griffin, when the Chevrolet pulled in front of them, Moore said: "There those niggers is." Moore explained that the wheels on the Chevrolet were ones that had been stolen from him. The Chevrolet pulled over in front of a house, and Moore and the defendant told Griffin to slow down. Moore and the defendant then each pulled out a gun. As Griffin drove by, he heard four to six shots and thought that Moore and the defendant were doing the shooting. He then discovered that Moore had accidentally shot the defendant in the arm during the incident, and they drove the defendant to the hospital.

At the defendant's trial, however, Griffin told a somewhat different story. Griffin testified that Moore was the only one telling him to slow down and that Moore was the only one in the car with a gun. Griffin stated that after they arrived at the hospital, Moore left. Griffin went in to make sure that the defendant was getting treatment and then picked up the 9 mm. pistol that Moore had used from the floor of the truck and put it in the wheel well. He called his mother, began walking around, and was later picked up by police.

The defendant testified that he did not see the Chevrolet because he was not paying attention. He stated that they were driving along when he suddenly heard a gunshot and realized that Moore had shot him in the arm. Moore apologized and they drove to the hospital. According to the defendant, Moore's gun was a 9 mm. pistol.

Four occupants were in the Chevrolet when the shots were fired. Three escaped unharmed but one person, Frederick Estes, was killed.

Later that evening, Officer Chad Cowher of the Kansas City, Kansas, police department responded to a report of a gunshot victim at the hospital. He went there to talk to the victim, who turned out to be the defendant. However, when he asked the defendant his name, the defendant identified himself as Frederick Estes. At this time, another officer notified him that there was a blue pickup truck in the hospital parking lot that matched the description of the vehicle involved in the earlier drive-by shooting.

Detective Greg Lawson of the Kansas City, Kansas, police department also spoke to the defendant. The defendant also identified himself to Lawson as Frederick Estes. The defendant's hospital wrist band bore the name Frederick Estes. Lawson called back to the scene of the drive-by shooting to see if anyone there knew a Frederick Estes and was informed that Estes had been the victim. When confronted, the defendant eventually admitted that his name was Wilkins.

At trial, the defendant denied telling anyone his name was Frederick Estes, instead stating that he gave the name John Wilkins in order to avoid being arrested for unpaid traffic fines. He did not know how the name Frederick Estes got on his hospital wrist band.

Police searched the pickup and recovered the 9 mm. pistol from the wheel well. The 9 mm. had blood on it. Testing revealed that while the blood on the 9 mm. could not have come from Moore, it was consistent with that of the defendant. Two .380 caliber shell casings were found under the passenger seat of the pickup. A .380 caliber shell casing was found at the murder scene as well as a 9 mm. shell casing. Testing on the casing revealed that the 9 mm. shell casing had come from the 9 mm. found with the pickup. Four bullets were found imbedded or otherwise inside the Chevrolet. They were all .380 caliber.

The defendant was convicted of first-degree murder on a combined premeditated/felony murder theory. Additional facts necessary to resolve the issues presented will be set forth in the analysis.

1. Failure to disclose exculpatory evidence:

The defendant contends that his right to a fair trial was denied because the State failed to disclose that it had made a deal with Griffin, the key prosecution witness, not to prosecute him in exchange for his trial testimony. He contends that failure to disclose this deal constituted the withholding of exculpatory evidence and should result in a new trial.

In our recent decision of *State v. Aikins*, 261 Kan. 346, 932 P.2d 408 (1997), this court discussed the constitutionally protected privilege of the defendant to request and obtain from the prosecution evidence that is material to the guilt or innocence of the defendant. We said:

"Suppression of such evidence is a violation of the defendant's Fourteenth Amendment due process rights. Prosecutors are under a positive duty, independent of court order, to disclose exculpatory evidence to a defendant. This duty to disclose exculpatory evidence to the defense exists even where no request has been made." *State v. Aikins*, 261 Kan. 346, Syl. ¶ 17.

See *Brady v. Maryland*, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963).

The defendant is correct in pointing out that evidence of the State's agreement not to prosecute a key witness in exchange for his trial testimony would certainly be the type of evidence that a prosecutor must disclose to a defendant even without a request under our decision in *State v. Aikins*. However, before any duty arises, there must be evidence of the agreement. In this case, the defendant presented no evidence of such an agreement and the record does not establish such proof.

Griffin, the witness with whom the defendant claims the prosecution made a deal, testified at trial and denied taking part in any deal with the State in exchange for his testimony. He also testified that he was concerned about being charged. During closing argument, defense counsel argued to the jury that the State had cut a deal with Griffin. The State rebutted that assertion in its argument:

"[Defense counsel] said, well, the State gave Michael Griffin immunity. You heard nothing about immunity from him and I guarantee you if there was an offer of immunity made to him, [Defense counsel] would have jumped on that in cross-examination. That didn't happen, did it? No offer of immunity."

The defendant did not raise the issue of the State's failure to disclose an alleged deal with Griffin at any time prior to or during the trial. In his motion for new trial, the defendant only alleged: "The testimony offered by the state's key witness, Michael Griffin [, is the] result of an obvious 'deal' cut with the government and by Griffin's own admission did not accurately recount the event of the night of the crime which makes it unreliable." Thus, the defendant's argument was that the evidence was unreliable, not that the State had failed to disclose that a deal had been made.

The trial court in making its ruling upon the defendant's motion for new trial stated: "It was obvious that Mr. Griffin had cut a deal with the government." However, the court found that the deal did not render the evidence inadmissible and gave no indication of why it thought that a deal had been struck. It must be emphasized that the trial court's statement is not evidence. There is no evidence from which this court can determine whether the State failed to disclose a deal to the defendant. The State asserts in its brief that no deal was made.

Had the defendant raised the issue of whether the prosecution failed to disclose an agreement with a key prosecution witness at trial, the court could have addressed the issue, heard evidence in order to determine whether the State had in fact struck a deal with Griffin, and taken whatever remedial action was required. Because the defendant failed to raise the issue, we are left with the trial court's remark, without evidence, that a deal had been struck. The record supports the prosecution's assertion that no deal had been struck for Griffin's testimony. It is the burden of the appellant to provide a record which is sufficient to establish the claimed error. *State v. Ninci*, 262 Kan. 21, 53, 936 P.2d 1364 (1997). Under the circumstances, absent evidence that the State did in fact strike a deal with Griffin, the defendant's contention fails.

## 2. Questions asked by the State implying witness intimidation:

The defendant argues that the State, by its questions on cross-examination, improperly implied that Griffin had been threatened into changing his testimony at trial. The defendant contends that

there was no evidence of such intimidation and, thus, the State's reference to it was improper and denied him his right to a fair trial.

When Griffin took the stand at trial, his testimony differed remarkably from his earlier statement to police. Rather than being inculpatory, his testimony on the stand minimized the involvement of the defendant in the shooting. In an effort to explain this change in testimony, the State asked the following questions:

"[State]: Mr. Griffin, have you ever been threatened about your testimony before in this case?

"[Griffin]: No.

"[State]: Have you ever been intimidated where you felt you were intimidated about your testimony before in this case.

"[Griffin]: No.

"[State]: Have you ever—ever filed a police report in Kansas City, Missouri regarding anyone in this case?

"[Griffin]: No.

"[State]: Never filed a police report?

"[Griffin]: Who?

"[State]: You, did you ever cause a police report to be filed?

"[Griffin]: Nah.

"[State]: You ever file a police report in regard to an Ed Moore?

"[Griffin]: No. Who is that?

"[State]: Did you ever discuss with Detective Shomin someone intimidating you?

"[Griffin]: No.

"[State]: Did you ever discuss with Detective Shomin an Ed Moore?

"[Griffin]: Nah."

The State, later realizing that it had mistakenly used the name Ed Moore instead of Ed Booth, continued questioning:

"[State]: And after the preliminary hearing, did you have a conversation with Mr. Booth?

"[Griffin]: No.

"[State]: Didn't talk to Mr. Booth at all?

"[Griffin]: No.

"[State]: Did you ever file a police report or talk to a police officer in Kansas City, Missouri in regard to Mr. Booth?

"[Griffin]: No.

"[State]: Mr. Booth ever make any statements to you?

"[Griffin]: All I know—all I know he was playing on the phone and my mother told me.

"[State]: Who was playing on the phone?

"[Griffin]: Edward Booth was.

"[State]: And the phone at your house?
"[Griffin]: Yeah."

The defendant also complains of the following cross-examination of Edward Booth, a friend of both Griffin and the defendant:

"[State]: As a matter of fact, those conversations you had that you and he discussed it was where the first time before prelim you went to him asking him to change his story, isn't it?
"[Booth]: No.
"[State]: And the second conversation you had with him was after prelim when you confronted him and said, is that the best you could do?
"[Booth]: No.
. . . .
"[State]: Did you try to help him with what the truth was?
"[Booth]: Excuse me?
"[State]: Did you try to help him with what the truth was?
"[Booth]: No."

The defendant is correct in his claim that a prosecutor may not make assertions of fact in the form of questions to a witness absent a good faith basis for believing the asserted matters to be true. *State v. Cravatt*, 267 Kan. 314, 330, 979 P.2d 679 (1999). If however, there is a good faith basis for believing the asserted matters to be true, such questions constitute appropriate cross-examination.

In this case, the defendant failed to object to any of the questions asked by the prosecution. A trial objection on the precise grounds the defendant now raises would generally require the prosecutor to proffer a basis for the disputed questions and provide this court with a record to review. Absent such an objection, the issue may not be considered. *Cravatt*, 267 Kan. at 330.

Moreover, there is evidence in the record that the State did have a good faith basis for its line of questioning, at least for Griffin's testimony. In his own testimony, Griffin acknowledged that his mother had contacted police about a threatening telephone call from his friend Edward Booth although Griffin testified at the trial that the call was just a joke. Detective Shomin testified that after the preliminary hearing, Griffin told him that he had been walking down the street when someone shot at him and he thought it was related to his possible testimony. Shomin also testified that the

Kansas City, Missouri, police department notified him that they had responded to Griffin's residence in regard to some threatening telephone calls.

### 3. Cumulative error:

The defendant's final argument is that even if neither one of the above issues is sufficient to warrant reversal of his conviction, the issue of cumulative error should be considered. We have recognized that cumulative trial errors may be so great as to require reversal of a defendant's conviction. The test is whether the totality of circumstances substantially prejudiced the defendant and denied him or her a fair trial. *State v. Carr*, 265 Kan. 608, 625-26, 963 P.2d 421 (1998).

However, it is clear that the two above issues were not error. As a result, the defendant has failed to show cumulative trial errors sufficient to warrant reversal.

Affirmed.