**FIRST CHICAGO INTERNATIONAL, Plaintiff,**

**v.**

**UNITED EXCHANGE CO. LTD., et al., Defendant.**

**No. 87 Civ. 1587 (WCC).**

United States District Court, S.D. New York.

March 30, 1989.

Dickstein, Shapiro & Morin (David I. Shapiro, Peter J. Kadzik, Mary–Patrice Brown and Mark Grossman, New York City, and Don W. Feeley, Chicago, Ill., of counsel), for plaintiff.

Danow, McMullan & Panoff, New York City (Keven Danow, of counsel), for defendant Kenneth Baiad.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Plaintiff First Chicago International ("FCI") brought this suit alleging that it lost twenty-three million dollars as the result of a check kiting scheme conducted by defendants. On May 31, 1988, the Court entered a default judgment against defendants UNEXCO, Jamal Abu Samara, and Jamal Abu Samara, Est. for the full amount sought plus interest. The only remaining defendant is Kenneth Baiad ("Baiad"), a former employee of FCI. Plaintiff maintains that Baiad was an active participant in the conspiracy to defraud the bank. Baiad denies any knowledge of the alleged check kiting scheme and asserts that the loss was a result of the bank's negligent credit policies.

This action is before the Court on plaintiff's motion for a protective order pursuant to Rule 26(c), Fed.R.Civ.P., and defendant's motion for reconsideration of the Court's Order denying its request for an advancement of attorney's fees. Plaintiff's motion is granted. Defendant's motion is denied.

## THE ATTORNEY–CLIENT PRIVILEGE

Plaintiff has moved for a protective order claiming that certain documents sought by defendant Baiad are covered by the attorney-client privilege. Defendant argues that the documents do not fall within the privilege, since they were prepared in the ordinary course of business.[1]

"The attorney-client privilege protects only communications made in confidence by a client to his attorney for the purpose of obtaining a legal opinion or the performance of a legal service and the legal advice or service rendered in confidence by the attorney." *In re Kaplan*, 110 F.R.D. 161, 163 (S.D.N.Y.1986) (Conner, J.). In other words, the privilege protects "not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S.Ct. 677, 683, 66 L.Ed.2d 584 (1981). The purpose of the privilege is to "encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy depends upon the lawyer being fully informed by the client." *Id.* at 389, 101 S.Ct. at 682.

The attorney-client privilege applies if: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers, (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *Colton v. United States*, 306 F.2d 633, 637 (2d Cir.1962), *cert. denied*, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963).

---

1. Defendant also contends that plaintiff has not provided sufficient descriptions of the documents. This argument can be dismissed summarily. In compliance with Local Rule 46(e)(2)(ii)(A), plaintiff has informed defendant of the subject matter, date, author, and addressee of each document withheld.

■ The attorney-client privilege is more difficult to apply in the corporate setting. *Upjohn*, 449 U.S. at 389, 101 S.Ct. at 682. The Supreme Court has assumed that corporations may assert the privilege. *Id.* at 390, 101 S.Ct. at 683; *accord United States v. Loften*, 507 F.Supp. 108, 112 (S.D.N.Y. 1981). Yet, the Court has declined to delineate the contours of the corporate privilege. *Upjohn*, 449 U.S. at 396, 101 S.Ct. at 686. Applying the privilege to corporations has proven problematic because corporations can only act through their agents. Moreover, extending the privilege to corporations risks creating an intolerably large zone of sanctuary since many corporations continuously consult attorneys. Any standard developed, therefore, must strike a balance between encouraging corporations to seek legal advice and preventing corporate attorneys from being used as shields to thwart discovery. Note, *Where Do We Go After Upjohn*, 81 Mich.L.R. 665, 667–68 (1983).

The leading case on the corporate privilege is *Upjohn v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). In that case, a drug manufacturer's counsel initiated an internal investigation concerning possible bribery by distributing questionnaires to managers, and interviewing employees. The results of the investigation were disclosed to the federal government. The government subsequently demanded to see the questionnaires and interview notes during a criminal investigation. The corporation asserted that the documents were privileged. The Supreme Court agreed. The Court rejected the government's argument that the privilege should only shield communications between a corporation's officers and counsel: "The control group test adopted by the court below ... frustrates the very purpose of the privilege by discouraging the communication of relevant information by employees of the client to attorneys seeking to render legal advice to the client corporation." *Id.* at 392, 101 S.Ct. at 684. It is natural to expect that "[m]iddle-level—and indeed lower-level—employees ... have the relevant information needed by corporate counsel if he is adequately to advise the client." *Id.* at 391, 101 S.Ct. at 683.

The Court's inquiry in *Upjohn* focused on the function of the attorney-client privilege: "Would application of the privilege under the circumstances of this particular case foster the flow of information to corporate counsel regarding issues about which corporations seek legal advice." Sexton, *A Post–Upjohn Consideration of the Attorney Client Privilege*, 57 N.Y.U.L. Rev. 443, 459 (1982).

■ A corollary to limiting the privilege to circumstances where protection furthers the policy behind it is that a communication between a corporation's employee and counsel should only be shielded if the communication would not have been made but for the client's need for legal advice or services. *Id.* at 492 ("to invoke the privilege, the claimant must demonstrate that the communication would not have been made but for the pursuit of legal services"). This requirement is analogous to the rule that "pre-existing" documents are not privileged. *See Gould Inc. v. Mitsui Mining & Smelting Co., Ltd.*, 825 F.2d 676, 680 (2d Cir.1987); *Colton*, 306 F.2d at 639. In sum, corporate documents will only be considered privileged where the party opposing discovery demonstrates "that the corporation's special frankness in its records was the result of its need for counsel." Simon, *The Attorney–Client Privilege as Applied to Corporations*, 65 Yale L.J. 953, 981 (1956).

■ Plaintiff has made a sufficient showing that the documents that it claims are privileged would not have been created had the corporation not needed the advice of counsel. The affidavits submitted by plaintiff suggest that after learning of an overdraft in the UNEXCO account, FCI's in-house counsel retained local counsel in Jordan and the United States, and initiated an investigation in order to assess FCI's legal options. James Foorman, who was in charge of plaintiff's law department in London at the time, says that in January, 1986, in-house counsel determined that "it was important to investigate the situation

immediately so that we could assess our legal options." Foorman Affidavit ¶ 2. In order to provide local counsel with a complete factual background, Foorman directed plaintiff's "employees who had been in Amman to record the results of this investigation and forward them" to him. *Id.* ¶ 7. Arthur Bilek, an officer of plaintiff in charge of fraud investigations, was asked to explore the circumstances surrounding the loss for FCI's in-house counsel, Don Feeley. Bilek instructed bank employees to conduct in-house interviews, and provided Feeley with the results of those inquiries. Bilek Affidavit ¶ ¶ 3 & 4. FCI's American counsel, Charles Douglas, participated in some of "the interviews conducted by FCI employees and FCI in-house counsel of other FCI employees." Douglas Affidavit ¶ 5. Clearly, the documents created to communicate the results of these investigations to plaintiff's counsel are privileged.

I have carefully examined plaintiff's descriptions of the documents withheld from Baiad. I find that each document was created at counsel's request, to provide counsel with the facts concerning the overdraft, so that counsel would be able to render a legal opinion. These documents are therefore privileged.

Defendant nevertheless contends some of the documents withheld by plaintiff were drafted by FCI employees in the ordinary course of its business and merely routed to in-house counsel. There is no evidence that any such "ordinary" reports were withheld by plaintiff. Specifically, defendant maintains that certain "call reports" were withheld: "FCI employees are required in the ordinary course of business to fill out call reports whenever they make contact with a client as well as trip reports summarizing all of their activities. All of these reports have been withheld under FCI's blanket claim of privilege along with all notes, memoranda and summaries of all these conversations." Defendant's Brief at 6. The Foorman Affidavit, however, makes it plain that the documents withheld by plaintiff would not have been created but for in-house counsel's initiation of an investigation of the facts surrounding the overdraft. According to plaintiff, "[n]o

such call reports were prepared; rather memoranda were prepared and directed to in-house counsel, Mr. Foorman." Plaintiff's Reply Brief at 7 n. 6.

Baiad also argues that documents prepared by FCI's audit department in the ordinary course of business have been withheld. Apparently, the work papers of the audit department have already been produced. Plaintiff's Reply Brief at 8 n. 7. Plaintiff also claims that the March, 1986 report sought by defendant, Defendant's Brief at 8, "was prepared at the request of counsel so that in-house counsel could provide legal advice." Plaintiff's Reply Brief at 9 n. 7. Such a document would clearly be privileged.

It indeed appears that the documents sought by defendant were created only because counsel asked for them to use in providing legal advice. Plaintiff's motion for a protective order is therefore granted.

## ADVANCEMENT OF ATTORNEY'S FEES

■ Defendant has moved for reconsideration of the Court's decision, dated June 27, 1987, denying his motion for an order directing plaintiff to advance defendant legal fees and expenses. *See First Chicago International v. United Exchange Co., Ltd.,* No. 87 Civ. 1587(WCC), Slip Op. (S.D. N.Y. June 27, 1987). Baiad initially argued that his right to an advancement of fees arises under the ninth paragraph of the Restated Certificate of Incorporation (the "1987 Certificate") of the First Chicago Corporation ("FCC"). I noted that "[t]he restated certificates upon which Baiad relies were enacted on April 10, 1987," that Baiad's "cause of action accrued prior to February 1986," and that Baiad's employer's intended the amendments to "have a prospective effect." *Id.* at 4 & 5. I concluded that Baiad's right to an advancement of fees is controlled by the Certificate of Incorporation filed by FCC on January 23, 1969 (the "1969 Certificate"), and that the 1969 Certificate leaves the matter "to the discretion of the board of directors." *Id.* at 5.

Baiad now contends that the Court erred in denying his request for an advancement of fees. After carefully considering defendant's grounds for reargument, I conclude that, although my analysis of the 1987 Certificate should be modified, my decision to reject defendant's request for an advancement must stand.

The 1969 Certificate provided only moderate protection to FCC directors, officers, and employees sued on account of their service to the corporation. Such individuals would be indemnified in limited circumstances. In addition, the board was given discretion to advance expenses incurred in defending such actions, upon an undertaking by the director, officer or employee to repay the advance if it was determined that he was not entitled to indemnification.

The 1987 Certificate expanded the protection provided by the 1969 Certificate in the areas of limited liability, indemnification, and advancements of litigation expenses. The amendment: (1) limited the personal liability of FCC directors "for monetary damages for breach of fiduciary duty as a director"; (2) provided indemnification to the fullest extent provided by Delaware law to any person made a party or threatened to be made a party to any "threatened, pending or completed action" by reason of the fact that the person "is or was a director, officer or employee of the corporation"; and (3) provided that FCC would pay in advance litigation expenses incurred by "a director, officer or employee" as long as the person promises to repay the advance if it is ultimately determined that he is not entitled to indemnification.

Baiad argues that extrinsic evidence supports his contention that the 1987 Certificate applies retroactively. I agree that Baiad's evidence may demonstrate that one portion of the 1987 Certificate is retroactive. Nevertheless, I conclude that the provision dealing with advancements applies only prospectively.

Defendant's evidence is a document distributed by the FCC board prior to the shareholders' meeting at which the 1969 Certificate was amended. The document indicates that the provision dealing with limited liability is not retroactive: "[T]he proposed amendment does not eliminate liabilities which may arise out of acts or omissions occurring prior to the amendment, so that directors would remain potentially liable for monetary damages in connection with any such acts or omissions." Defendant's Exhibit A at 23. The document suggests, however, that the indemnification provision, which protects a person who "is or was a director, officer or employee of the corporation" and covers "any threatened, pending or completed action," may have a retroactive effect:

> Two stockholder derivative actions alleging breach of the directors' fiduciary duty to the Corporation have recently been dismissed. In one case, the dismissal was without prejudice; in the other the judge has not yet determined whether the dismissal is with prejudice. Had the proposed amendment been in effect at the time the alleged breach occurred, the plaintiffs would have been precluded from seeking monetary damages against any director of the Corporation for breach of the director's duty of care. If the second case referred to above is reinstated and the proposed amendment is approved, the Corporations's directors and officers will be entitled to indemnification to the extent set forth in the proposed amendment.

*Id.* at 24.[2] Unfortunately, Baiad's extrinsic evidence sheds no light on the question of whether the advancement provision of the 1987 Certificate applies retroactively. In the absence of any evidence to the contrary, I must presume that the amendment applies prospectively. *See* 8 Del.Gen'l Corp.Law §§ 103(d) & 242(b)(1) (1983) (amendments "shall be effective upon filing

---

**2.** On the other hand, it is clear that the indemnification provision in the 1987 Certificate tracks recent changes in Delaware corporation law, and there is a strong aversion in Delaware corporation law against retroactive amendments. *See* 8 Del.Gen'l Corp.Law § 393 (1983); 64 Del.

Laws, c. 112 § 71 ("All ... suits pending [and] all rights of action conferred by and under laws enacted prior to the adoption or amendment of this act, shall not be impaired, diminished or affected by this act.").

date"); *c.f. United States v. Security Industrial Bank,* 459 U.S. 70, 79, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982) (statutory interpretation). Thus, although Baiad may be entitled to seek indemnification under the 1987 Certificate when this action is terminated, the 1969 Certificate controls his right to an advancement of fees.

■ Baiad also argues that, under New York law, N.Y.Bus.Corp.Law § 724 (McKinney Supp.1989), this Court has discretion to direct plaintiff to advance defendant his fees and expenses in defending this suit. Plaintiff replies that the Court has no such power under New York law, since ordering an advance "would be inconsistent with a provision of the [FCC] certificate of incorporation ... in effect at the time of the accrual of the alleged cause of action." N.Y.Bus.Corp.Law § 725(b)(2) (McKinney Supp.1989).

I need not determine whether ordering plaintiff to pay defendant's fees in advance would be inconsistent with the 1969 Certificate, since it is evident that Section 724 is not applicable in this case. Section 724 is entitled "Indemnification of directors and officers by a court." Under that Section, a court may award indemnification only "to the extent authorized under section 722 (Authorization for indemnification of directors and officers), and paragraph (a) of section 723." N.Y.Bus.Corp.Law § 724(a). Section 723(a) provides for the indemnification of successful defendants in actions "of the character described in section 722." N.Y.Bus.Corp.Law § 723(a) (McKinney Supp.1989). Section 722 permits a corporation to indemnify a defendant sued "by reason of the fact that he, his testator or intestate, was a director or officer of the corporation." N.Y.Bus.Corp.Law § 722(a) (McKinney Supp.1989). In sum, New York law only deals with the indemnification of directors and officers. Mere employees cannot request a court to order the corporation to advance their legal fees under Section 724. Since it is undisputed that Baiad was an employee, and not a director or officer, his request that the Court order plaintiff to advance his expenses must be denied.

## CONCLUSION

For the reasons stated above, plaintiff's motion for a protective order is granted, and defendant's motion for reconsideration of the Court's order denying defendant's request for an advancement of attorney's fees is denied.

SO ORDERED.