## In the Matter of a Grand Jury Investigation.

Worcester. December 2, 2008. - March 23, 2009.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Attorney at Law,* Attorney-client relationship. *Privileged Communication. Threatening. Grand Jury. Practice, Criminal,* Grand jury proceedings. *Evidence,* Privileged communication, Threat, Grand jury proceedings, Relevancy and materiality.

An attorney who, consistent with the Rules of Professional Conduct, had disclosed communications that a client had made to him threatening to harm others could not be compelled to testify before a grand jury regarding those communications, where the communications were made in furtherance of the rendition of legal services, and therefore, the attorney-client privilege applied. [455-459]

Motion for permission to summons an attorney to the grand jury filed in the Superior Court Department on December 14, 2007.

The case was reported to the Appeals Court by *John S. McCann,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John M. Goggins* for the attorney.

*Jane A. Sullivan,* Assistant District Attorney, for the Commonwealth.

Spina, J. This case requires us to decide whether the attorney-client privilege applies where a client leaves messages on his counsel's telephone answering machine threatening to harm others and the attorney discloses those communications in order to protect those threatened.

The salient facts are not in dispute. Attorney John Doe was representing Michael Moe,[1] a father, in a care and protection

---

[1]The Commonwealth's motion to impound the case was allowed by the Superior Court judge and we shall therefore use pseudonyms.

proceeding in the Juvenile Court. On November 8, 2007, two days after an adverse ruling by a Juvenile Court judge, Moe left six messages on Attorney Doe's answering machine between 1:08 A.M. and 1:24 A.M. Moe indicated that he knew where the judge lived and that she had two children. In the fourth message, a voice that Attorney Doe recognized as Moe's wife stated that she and Moe were going to "raise some hell." In the fifth message, Moe stated that "some people need to be exterminated with prejudice."[2] Attorney Doe subsequently erased the messages from the answering machine.

During the following week, Attorney Doe observed that Moe had become "more and more angry," and on November 13, 2007, he filed a motion to withdraw as Moe's counsel, which was subsequently allowed. Concerned for the safety of the judge and her family, he disclosed the substance of the messages to the judge.

On November 21, 2007, Attorney Doe was interviewed by a State trooper regarding the substance of the messages, but declined to sign a written statement.

A District Court complaint alleging threats to commit a crime, see G. L. c. 275, § 2, and intimidation of a witness, see G. L. c. 268, § 13B, subsequently issued against Moe. The Commonwealth then initiated grand jury proceedings and filed a motion to summons Attorney Doe before the grand jury.[3] See Mass. R. Prof. C. 3.8 (f), 426 Mass. 1397 (1998) (discussing circumstances under which prosecutor may subpoena attorney to criminal proceeding to present evidence about client). That motion was allowed. On December 21, 2007, Attorney Doe, citing the attorney-client privilege and Mass. R. Prof. C. 1.6, as amended, 426 Mass. 1435 (1998), moved to quash the summons. A judge in the Superior Court denied Attorney Doe's motion, reasoning that Attorney Doe and Moe had not carried their burden of demonstrating that the attorney-client privilege applied "because they . . . failed to show that the messages were left in an attempt to obtain legal services." Attorney Doe filed a motion to reconsider, requesting, inter alia, an evidentiary hearing.

[2]The defendant also threatened a Juvenile Court social worker.

[3]At Moe's arraignment in the District Court, the Commonwealth moved for pretrial detention. Attorney Doe, who had been summonsed to that hearing, indicated, through counsel, that he would object to testifying against Moe.

The motion was denied. The Commonwealth and Attorney Doe submitted a joint request to report the decision to the Appeals Court. See Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004). The Superior Court judge reported the case, and we transferred the case here on our own motion.[4]

Neither party disputes that Attorney Doe could, consistent with rule 1.6, disclose the substance of Moe's messages. Cf. *Purcell* v. *District Attorney for the Suffolk Dist.*, 424 Mass. 109, 110-111 & n.1 (1997) (*Purcell*) (no question as to ethical propriety of attorney's disclosure where client threatened to burn down building). Rule 1.6 provides, in pertinent part:

> "(a) A lawyer shall not reveal confidential information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).

> "(b) A lawyer *may* reveal, and to the extent required by Rule 3.3, Rule 4.1 (b), or Rule 8.3 must reveal, such information: (1) to prevent the commission of a criminal or fraudulent act that the lawyer reasonably believes is likely to result in death or substantial bodily harm . . ." (emphasis added).

While nothing in rule 1.6 (b) required Attorney Doe to disclose Moe's communications to the judge or police, he had discretion to do so.[5] However, the ethical permissibility of Attorney Doe's disclosure does not resolve the distinct issue presented here: whether Attorney Doe can be compelled to testify before the

---

[4]The Commonwealth also sought to compel Attorney Doe to testify in the criminal proceedings pending in the District Court. The District Court judge, while acknowledging the Superior Court judge's contrary ruling, denied the Commonwealth's motion to compel for substantially the same reasons discussed *infra.*

[5]The Commonwealth does not argue that Mass. R. Prof. C. 3.3, 426 Mass. 1383 (1998) (candor toward tribunal); Mass. R. Prof. C. 4.1 (b), 426 Mass. 1401 (1998) (failure to disclose material fact to third person where disclosure necessary to avoid assisting in criminal or fraudulent act by client); or Mass. R. Prof. C. 8.3, as amended, 430 Mass. 1326 (1999) (reporting professional misconduct), would require Attorney Doe to disclose Moe's communications. We note that comment [3] to rule 4.1 explains:

"[T]he word 'assisting' refers to that level of assistance which

grand jury. See *Purcell, supra* at 111; comment [5] to Mass. R. Prof. C. 1.6, 426 Mass. 1322 (1998) (discussing difference between attorney-client privilege and rule of confidentiality).

Evidentiary privileges "are exceptions to the general duty imposed on all people to testify." *Commonwealth* v. *Corsetti,* 387 Mass. 1, 5 (1982). We accept such privileges "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Three Juveniles* v. *Commonwealth,* 390 Mass. 357, 359-360 (1983), cert. denied sub nom. *Keefe* v. *Massachusetts,* 465 U.S. 1068 (1984), quoting *Elkins* v. *United States,* 364 U.S. 206, 234 (1960) (Frankfurter, J., dissenting). The attorney-client privilege "is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure." *Purcell, supra* at 116, quoting *Matter of a John Doe Grand Jury Investigation,* 408 Mass. 480, 481-482 (1990). A party asserting the privilege must show that (1) the communications were received from the client in furtherance of the rendition of legal services; (2) the communications were made in confidence; and (3) the privilege has not been waived. See *Matter of the Reorganization of Elec. Mut. Liab. Ins. Co.,* 425 Mass. 419, 421 (1997). See also *Purcell, supra* at 115.

The Commonwealth contends that the attorney-client privilege does not apply because Moe's communications were not made "for the purpose of facilitating the rendition of legal services." *Purcell, supra* at 115. In making this argument, the Commonwealth implicitly asks us to reconsider a portion of our discussion in the *Purcell* case.

---

would render a third party liable for another's crime or fraud, i.e., assistance sufficient to render one liable as an aider or abettor under criminal law or as a joint tortfeasor under principles of tort and agency law. The requirement of disclosure in this paragraph is not intended to broaden what constitutes unlawful assistance under criminal, tort or agency law, but instead is intended to ensure that these rules do not countenance behavior by a lawyer that other law marks as criminal or tortious."

In *Purcell, supra,* the client was discharged as a maintenance man at the apartment building in which his apartment was located and had received an order to vacate his apartment. *Id.* at 110. During consultation with an attorney, the client stated an intent to burn the apartment building. *Id.* The attorney disclosed these communications to police and criminal charges were brought against the client. *Id.* When the prosecutor subpoenaed the attorney to testify at trial, the attorney filed a motion to quash, which was denied. *Id.* The central issue in that case was whether the crime-fraud exception to the attorney-client privilege applied. *Id.* at 111-112. We concluded that the communications would not fall within the crime-fraud exception unless the district attorney could establish facts by a preponderance of the evidence showing that the client's communication sought assistance in or further-ance of future criminal conduct.[6] *Id.* at 113-114.

Recognizing that whether the attorney-client privilege applied at all was open on remand, we also considered whether a com-munication of an intention to commit a crime, if not within the crime-fraud exception, could be considered a communication for the purposes of facilitating the rendition of legal services. *Id.* at 115. We held that a "statement of an intention to commit a crime made in the course of seeking legal advice is protected by the privilege, unless the crime-fraud exception applies." *Id.* We reasoned that a gap between the crime-fraud exception and the applicability of the privilege "would make no sense," *id.* at 116, because the attorney-client privilege was premised on the benefits of unimpeded communication between attorney and client, *id.,* and noted that "an informed lawyer may be able to dissuade the client from improper future conduct and, if not, *under the ethical rules* may elect in the public interest to make a *limited disclosure* of the client's threatened conduct" (emphasis added). *Id.*

The limited disclosure adverted to in the *Purcell* case oc-curred here. Concerned for the safety of the judge, her family, and a social worker, Attorney Doe disclosed Moe's communica-

---

[6]The Commonwealth quite properly does not argue here that the crime-fraud exception to the attorney-client privilege applies. Under the crime-fraud exception, client communications which "seek[] assistance in or furtherance of future criminal conduct" are not protected by attorney-client privilege. *Pur-cell* v. *District Attorney for the Suffolk Dist.,* 424 Mass. 109, 114 (1997).

tions to the judge and law enforcement authorities to protect them from harm.

We discern no reason to depart from the *Purcell* decision, and hold that Moe's communications were made in furtherance of the rendition of legal services and thus protected by the attorney-client privilege. The Commonwealth's argument to the contrary essentially raises an issue of germaneness. See 8 J. Wigmore, Evidence § 2310 (McNaughton rev. ed. 1961); 24 C.A. Wright & K.W. Graham, Jr., Federal Practice and Procedure § 5490 (1986 & Supp. 2008). Scholars, commentators, and courts have formulated a number of tests for determining the germaneness of a client's communication.[7] However, none of these formulations appears to give clients breathing room to express frustration and dissatisfaction with the legal system and its participants. The expression of such sentiments is a not uncommon incident of the attorney-client relationship, particularly in an adversarial context, and may serve as a springboard for further discussion regarding a client's legal options. If a lawyer suspects that the client intends to act on an expressed intent to commit a crime, the lawyer may attempt to dissuade the client from such action, and failing that, may make a limited disclosure to protect the likely targets. *Purcell, supra* at 116. Requiring the privilege to yield for purposes of a criminal prosecution not only would hamper attorney-client discourse, but also would discourage lawyers from exercising their discretion to make such disclosures, as occurred here, and thereby frustrate the beneficial public purpose underpinning the

---

[7]See E.M. Morgan, Basic Problems of Evidence 113 (4th ed. 1963) ("The communication, to be privileged, must be such that the lawyer or the client reasonably believed it to be relevant to the subject of the consultation . . ."); Restatement (Third) of the Law Governing Lawyers § 72 comment c, at 550 (2000) ("A client must consult the lawyer for the purpose of obtaining legal assistance and not predominantly for another purpose"); 8 J. Wigmore, Evidence § 2310, at 599 (McNaughton rev. ed. 1961) ("test is . . . not whether the fact or the statement is actually necessary or material or relevant to the subject of the consultation, but whether the statement is made as a *part of the purpose of the client* to obtain advice on that subject" [emphasis in original]); *Neuberger Berman Real Estate Income Fund, Inc.* v. *Lola Brown Trust No. 1B,* 230 F.R.D. 398, 411 (D. Md. 2005) (request for legal advice must be "primary purpose" of communication between client and lawyer); *First Chicago Int'l* v. *United Exch. Co.,* 125 F.R.D. 55, 57 (S.D.N.Y. 1989) (communication privileged if it would not have been made "but for" client's need for legal advice or services).

discretionary disclosure provision of rule 1.6. See *Purcell, supra* at 111 & n.1, 114. Furthermore, any test to ascertain the germaneness of an ostensibly threatening communication on a case-by-case basis would make the privilege's applicability uncertain, rendering the privilege "little better than no privilege." *Rhone-Poulenc Rorer, Inc.* v. *Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994), quoting *In re von Bulow*, 828 F.2d 94, 100 (2d Cir. 1987). Warning clients that communications deemed irrelevant to the matter for which they have retained counsel will not be protected not only may discourage clients from disclosing germane information, but also may discline clients to share their intentions to engage in criminal behavior. In the latter circumstance, a lawyer's ability to aid in the administration of justice by dissuading a client from engaging in such behavior is impaired. See *In re Pub. Defender Serv.*, 831 A.2d 890, 901 (D.C. 2003). The lawyer also may never receive the very information necessary for him or her to determine whether to make a limited disclosure to prevent the harm contemplated by the client.

In sum, we reaffirm that a client's communications to his lawyer threatening harm are privileged unless the crime-fraud exception applies. See *Purcell, supra* at 116. Because the Commonwealth does not assert that Moe's communications come within the crime-fraud exception, they were privileged. The order denying Attorney Doe's motion to quash is hereby vacated and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*