No. 115,075

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT L. BOATWRIGHT,
*Appellant.*

SYLLABUS BY THE COURT

1.

The principle of confidentiality is given effect in two related bodies of law:  the attorney-client privilege in the law of evidence and the rule of confidentiality established in professional ethics. The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of attorney-client confidentiality applies in all situations other than those where evidence is sought from the attorney through compulsion of law.

2.

A privilege is a rule of evidence that allows a person to shield confidential communication or information from compelled disclosure during litigation. In Kansas, the attorney-client privilege is statutory and is found in the code of evidence at K.S.A. 2016 Supp. 60-426. This statute protects from compelled disclosure certain confidential communications made between an attorney and client in the course of their professional relationship. The privilege applies narrowly because, like all privileges, it operates to deprive the factfinder of otherwise relevant information.

3.

An attorney's ethical duty of client confidentiality arises under the Kansas Rules of Professional Conduct, specifically KRPC 1.6 (2017 Kan. S. Ct. R. 294), and is part of a system of professional ethical standards designed to provide guidance to lawyers and a structure for regulating conduct through disciplinary agencies. In contrast to the attorney-client privilege, the attorney's ethical duty of confidentiality under the disciplinary rules applies in all situations other than those where evidence is sought from the lawyer through compulsion of law. It is expansive because the cloak of confidentiality is intended to facilitate the full development of facts essential to proper representation of the client.

4.

The attorney-client privilege has been distilled to mean that where legal advice is sought from a professional legal advisor in his or her capacity, communications made in the course of that relationship and made in confidence by the client are permanently protected from disclosures by the client, the legal advisor, or any other witness unless the privilege is waived.

5.

Under the crime-fraud exception, the attorney-client privilege does not extend to a communication in which the legal service was sought or obtained in order to enable or aid the commission or planning of a crime or a tort.

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed July 28, 2017. Reversed and remanded.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

2

Before ATCHESON, P.J., MALONE and POWELL, JJ.

POWELL, J.: During a meeting with his attorney to discuss the State's plea offer in another criminal case, Robert Boatwright threatened to kill his ex-fiancée. Alarmed by this threat, Boatwright's attorney disclosed this communication to the Sedgwick County Sheriff's Office, which resulted in Boatwright being charged with one count of criminal threat, a severity level 9 person felony. At trial, Boatwright's attorney and the detective to whom she reported the communication testified about the substance of Boatwright's threats. Over Boatwright's repeated objections, the district court admitted the statements, and the jury convicted him.

Boatwright now appeals his conviction on the ground that his statement to his attorney was protected by the attorney-client privilege. We agree and reverse.

FACTUAL AND PROCEDURAL BACKGROUND

In 2014, Boatwright pled guilty to criminal threat against his then-fiancée, D.T. Boatwright was sentenced to prison and ordered not to contact D.T. While incarcerated, Boatwright attempted to call D.T. twice, but she did not answer. Prior to his release, Boatwright sent a package of his belongings to D.T.'s residence where he also had resided before his imprisonment. After these actions, the State charged Boatwright with violation of a protective order and with stalking in two new cases.

The district court appointed Dianne Rosell to represent Boatwright in the two new cases. On December 3, 2014, Rosell met with Boatwright for the first time to discuss a plea offer and to gain more information from Boatwright regarding the details of his cases. The meeting lasted about 15 minutes. Rosell and Boatwright met in a private room in the professional visitation area of the jail. As was her practice for her own safety, Rosell left the door cracked during their meeting. Boatwright indicated that he was not

3

interested in accepting the plea offer; rather, he wanted to get his property back from D.T. and to see her in person. Rosell told Boatwright that he was not allowed to see D.T. because of the no contact order and that there were other ways to get his property back without D.T. being present. Boatwright became upset with Rosell after her response and said he wanted a new attorney. Rosell responded, "Fine, file a motion." The conversation ended when Boatwright left the professional visitation area.

On January 8, 2015, after not receiving a motion for new counsel, Rosell again met with Boatwright in the professional visitation area to once again discuss the plea offer in the cases. This meeting lasted approximately 10 minutes. Boatwright again rejected the plea offer and emphasized that he wanted to get his property from D.T. and that he wanted D.T. to be present when he did so. Rosell again informed Boatwright he was not allowed to see the victim. Boatwright became very upset during this conversation and commented, "[D.T.'s] robbing me of my stuff, the State's robbing me of my stuff, so I'm going to get my stuff, and I'm going to kill her." Boatwright again indicated he was unhappy with Rosell's representation. The conversation ended shortly after Boatwright's above statements.

After this meeting, Rosell spoke with her supervisor about her ethical obligations after Boatwright's statement to her, and her supervisor directed her to inquire of the Disciplinary Administrator. Rosell proposed a hypothetical scenario based on the facts of the incident to the Disciplinary Administrator, who cleared her to make a report to law enforcement under the Kansas Rules of Professional Conduct (KRPC). Rosell reported Boatwright's statements to the Sedgwick County Sheriff's Office and withdrew from his cases. Boatwright was eventually acquitted of these two charges at trial.

As a result of Rosell's report, the State charged Boatwright with one count of criminal threat, and the case proceeded to trial. A jury convicted Boatwright of criminal threat, and the district court sentenced him to 13 months' imprisonment.

4

Boatwright timely appeals.

## DID THE DISTRICT COURT ERR IN ADMITTING ROSELL'S TESTIMONY AGAINST HER FORMER CLIENT?

On appeal, Boatwright makes numerous allegations of error on the part of the district court. However, his principal contention of error, which we address first because it is dispositive, is that the attorney-client privilege prohibited the admission of his statement to Rosell threatening to kill his ex-fiancée. Because resolving this issue requires the application of the statutory rules of evidence, our review is de novo. See *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

At a hearing on a number of pretrial motions, the district court considered the admissibility of Boatwright's statement to Rosell and, in doing so, discussed KRPC 1.6 (2017 Kan. S. Ct. R. 294) relating to the client-lawyer relationship and the confidentiality of information:

> "I believe the rule [1.6] allows the attorney to essentially waive the attorney/client privilege, and I don't believe there is anything about that that would under the Rules of Professional Conduct or beyond that legally prevent the Court from finding that attorney/client privilege has been waived.
>
> "And so I am making that finding that the defendant, allegedly, and his actions has waived the attorney/client privilege. I would also note that, again, regardless of the ruling from the disciplinary administrator, the fact that Miss Rosell did, in fact, conflict off this case and was allowed to conflict off this case, I think is further support that—for this specific reason of this police report, that that is further support that for these limited purposes and, again, these are limited purposes, she's not giving testimony as to every conversation or every aspect of every conversation. It is only, I think, fairly strictly limited to what's related to this alleged crime. And so, again, I believe that privilege is—

is and has been waived, and so I will overrule the defense request along those lines on attorney/client."

Surprisingly, before the district court, neither party argued the applicability of K.S.A. 2016 Supp. 60-426—the statutory rule of evidence prescribing the attorney-client privilege—when determining the admissibility of Boatwright's statement to Rosell. The district court did not address it either.

The case proceeded to trial. Over Boatwright's multiple and continued objections, Rosell was allowed to testify about Boatwright's statement to her threatening to kill D.T. and her subsequent reporting of his threat to law enforcement. The detective to whom Rosell reported Boatwright's threat also testified about his interview of Rosell. Likely because of the district court's allowance of Rosell's testimony, Boatwright's counsel did not make a contemporaneous objection to the admission of this evidence.

A.    *KPRC 1.6(b)(1) is inapplicable to evidentiary questions.*

As we have already noted, the district court admitted Rosell's testimony on the basis of KRPC 1.6 (2017 Kan. S. Ct. R. 294), which, in applicable part, states:

> "(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).
>
> "(b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:
>
> (1) To prevent the client from committing a crime."

6

While neither party in the case at hand disputes that Rosell was within her ethical confines to disclose Boatwright's threat to the authorities—and we express no view on this issue—even if nothing in KRPC 1.6 prohibited Rosell from reporting Boatwright's threat, this ethics rule does not resolve the distinct issue at hand: whether Rosell's testimony concerning Boatwright's statement to her threatening to kill D.T., made at the time Boatwright was Rosell's client, may be admitted into evidence. Comment [5] to KRPC 1.6 (2017 Kan. S. Ct. R. 295) states:

> "The principle of confidentiality is given effect in two related bodies of law, the attorney-client privilege (which includes the work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics. The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in all situations other than those where evidence is sought from the lawyer through compulsion of law."

The comment makes clear that the concept of client confidentiality under KRPC 1.6 is different from the concept of the attorney-client privilege under K.S.A. 2016 Supp. 60-426, which is a statutory rule of evidence governing the compelled disclosure of certain communications between an attorney and his or her client in the course of litigation. In *State v. Gonzalez*, 290 Kan. 747, 757-59, 234 P.3d 1 (2010), our Supreme Court discussed the difference between the attorney-client privilege controlled by K.S.A. 60-426 and the duty of client confidentiality controlled by KRPC 1.6:

> "A privilege is a rule of evidence that allows a person 'to shield [a] confidential communication or information from compelled disclosure during litigation.' Imwinkelried, The New Wigmore: Evidentiary Privileges § 1.1, p. 2 (2d ed. 2009). In Kansas, the attorney-client privilege is statutory. It is found in the code of evidence at K.S.A. 60-426 . . . .
>
> . . . .

"[K.S.A. 60-426] protects from compelled disclosure certain confidential communications made between an attorney and client in the course of their professional relationship. The privilege applies narrowly because, like all privileges, it operates to deprive the factfinder of otherwise relevant information. *In re Bryan*, 275 Kan. 202, 222, 61 P.3d 641 (2003) (citing *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 373, 22 P.3d 124 [2001]).

"In contrast, an attorney's ethical duty of client confidentiality arises under the Kansas Rules of Professional Conduct and is part of a system of professional ethical standards designed to 'provide guidance to lawyers and . . . a structure for regulating conduct through disciplinary agencies.' Supreme Court Rule 226, Scope [20] (2009 Kan. Ct. R. Annot. 405). A violation of an ethical rule 'should not itself give rise to a cause of action against a lawyer' or 'necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation.' Supreme Court Rule 226, Scope [20]; see also *OMI Holdings, Inc. v. Howell*, 260 Kan. 305, 325, 918 P.2d 1274 (1996) (discussing Supreme Court Rule 226; ethics rules do not impose legal duty on attorneys). In contrast to the attorney-client privilege, which is a rule of evidence and applies only when the attorney 'may be called as a witness or otherwise required to produce evidence concerning a client[,]' the attorney's ethical duty of confidentiality under the disciplinary rules 'applies in all situations *other than those where evidence is sought from the lawyer through compulsion of law*.' (Emphasis added.) Comment [5] to KRPC 1.6 (2009 Kan. Ct. R. Annot. 469). Further, in contrast to the narrow scope of the attorney-client privilege, the ethical duty of client confidentiality applies broadly to *all* information related to representation of a client. KRPC 1.6(a); Comment [5] (2009 Kan. Ct. R. Annot. 468-69). It is expansive because the cloak of confidentiality is intended to 'facilitate the full development of facts essential to proper representation of the client [.]' Comments [2] and [4] to KRPC 1.6 (2009 Kan. Ct. R. Annot. 469).

"There is some overlap between the ethical duty of confidentiality and the attorney-client privilege. By definition, all communications protected by the attorney-client privilege will be confidential and covered by the ethical duty. K.S.A. 60-426(a) (communication must have been made in professional confidence). That overlap is the reason why the ethical duty of confidentiality requires an attorney to invoke the attorney-client privilege when it is applicable. Comment [13] to KRPC 1.6 (2009 Kan. Ct. R.

8

Annot. 470). But not all client confidences inevitably must be protected through invocation of attorney-client privilege."

In light of our Supreme Court's discussion of the interplay between KRPC 1.6 and K.S.A. 2016 Supp. 60-426, we find the district court erred in admitting Rosell's testimony concerning Boatwright's threat to kill D.T. under KRPC 1.6(b)(1) as it is not a rule of evidence and does not govern the admissibility of evidence at trial.

B.    *K.S.A. 2016 Supp. 60-426 barred the admission of Boatwright's statements to his attorney.*

The State argues that the district court's admission of this evidence was correct for the wrong reasons because K.S.A. 2016 Supp. 60-426 allows for the admission of Boatwright's statements. K.S.A. 2016 Supp. 60-426, in pertinent part, states:

> "(a) . . . [E]xcept as otherwise provided by subsection (b), communications found by the judge to have been between an attorney and such attorney's client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege: . . . (2) to prevent such client's attorney from disclosing it . . . . The privilege may be claimed by the client in person or by such client's attorney . . . .

> "(b) . . . Such privileges shall not extend to a communication: (1) If the judge finds that sufficient evidence, aside from the communication, has been introduced to warrant a finding that the legal service was sought or obtained in order to enable or aid the commission or planning of a crime or a tort."

Specifically, the State argues that the crime-fraud exception to the attorney-client privilege contained in K.S.A. 2016 Supp. 60-426(b)(1) applies because Boatwright was using Rosell's legal advice in order to enable or aid him in the commission or planning of a crime—*i.e.*, at a minimum the continued stalking of D.T.—as Boatwright continued to request D.T.'s presence as part of retrieving his personal belongings from the residence.

9

"[T]he State has the burden of establishing the existence of [this] exception." *Gonzalez*, 290 Kan. at 765.

The right of a criminal defendant to speak freely with his or her attorney is interwoven with the right to effective assistance of counsel. "Indeed, all other legal rights would be illusory without it." *Martin v. Lauer*, 686 F.2d 24, 32 (D.C. Cir. 1982). An attorney cannot give sound legal advice without being apprised of "all pertinent facts, no matter how embarrassing or inculpating these facts may be." *Wesp v. Everson*, 33 P.3d 191, 196 (Colo. 2001). "The importance of the attorney-client relationship is evidenced by the various privileges which protect it. The attorney-client privilege is 'one of the oldest recognized privileges for confidential communication known to the common law' and works to foster the underlying relationship." *United States v. Colorado Supreme Court*, 189 F.3d 1281, 1287 (10th Cir. 1999) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 [1981]).

However, our court has emphasized that "[t]he attorney-client privilege applies only to communications made to an attorney in his [or her] capacity as a legal advisor." *Wallace, Saunders, Austin, Brown & Enochs, Chtd. v. Louisburg Grain Co.*, 16 Kan. App. 2d 30, 36, 818 P.2d 805 (1991), *aff'd in part, rev'd in part by* 250 Kan. 54, 824 P.2d 933 (1992).

> "The justification for the privilege evaporates when the attorney-client communication works to further a fraud instead of to prevent one. Hence it long has been the rule that '[a] client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law[; h]e must let the truth be told.'" *In re Public Defender Service*, 831 A.2d 890, 901 (D.C. 2003) (quoting *Clark v. United States*, 289 U.S. 1, 15, 53 S. Ct. 465, 77 L. Ed. 993 [1933]).

The crime-fraud exception to the attorney-client privilege assures that the "'seal of secrecy,' [citation omitted], between lawyer and client does not extend to

10

communications 'made for the purpose of getting advice for the commission of a fraud' or crime." *United States v. Zolin*, 491 U.S. 554, 563, 109 S. Ct. 2619, 105 L. Ed. 2d 469 (1989).

The Massachusetts Supreme Court has construed the crime-fraud exception under circumstances very similar to the facts in our case. In *Purcell v. District Attorney for Suffolk Dist.*, 424 Mass. 109, 676 N.E.2d 436 (1997), a maintenance man was fired from his job at an apartment complex and was ordered to vacate his apartment. The former maintenance man told Purcell, an attorney he consulted in his case, that he would burn down the apartment building. Purcell reported the man's statements to police. Subsequently, the State subpoenaed Purcell to testify concerning the former maintenance man's statements to him. Purcell filed a motion to quash that subpoena, and the district court denied the motion and ordered him to testify. Purcell then appealed.

The court held that the crime-fraud exception to the attorney-client privilege did not apply because the maintenance man did not consult Purcell for the purpose of obtaining legal advice in furtherance of a crime. 424 Mass. at 113. The court highlighted the very policy struggle at stake here:

> "We must be cautious in permitting the use of client communications that a lawyer has revealed only because of a threat to others. Lawyers will be reluctant to come forward if they know that the information that they disclose may lead to adverse consequences to their clients. A practice of the use of such disclosures might prompt a lawyer to warn a client in advance that the disclosure of certain information may not be held confidential, thereby chilling free discourse between lawyer and client and reducing the prospect that the lawyer will learn of a serious threat to the well-being of others. To best promote the purposes of the attorney-client privilege, the crime-fraud exception should apply only if the communication seeks assistance in or furtherance of future criminal conduct." 424 Mass. at 114.

11

We find *Purcell* persuasive. Setting aside the observation that having a public defender as one's attorney may make it impossible as a matter of law for such a lawyer to be hired to further a nefarious purpose, the facts in this case amply demonstrate that Boatwright's meeting with Rosell was for the specific purpose of discussing the State's plea offer, not for the purpose of furthering a crime. In fact, there is nothing in the record that reflects the State's contention that Boatwright was seeking legal advice in order to enable or aid the commission or planning of a crime. See, *e.g.*, *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995) ("[T]he crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud."); *In re Grand Jury Proceedings*, 183 F.3d 71, 77 (1st Cir. 1999) ("Only when communications are intended directly to advance a particular criminal or fraudulent endeavor will their privileged status be forfeited by operation of [the crime-fraud] exception."); *In re Public Defender Service*, 831 A.2d at 902 ("[A]n ill-motivated client communication that 'goes nowhere'—as where the client consults an attorney with an evil purpose but the attorney quashes the venture before anything further is done to promote it—is not sufficiently in furtherance of a crime or fraud to fall within the crime-fraud exception."). Boatwright's meeting with Rosell under such circumstances does not satisfy the requirement of the crime-fraud exception to the attorney-client privilege.

Alternatively, the State argues that the attorney-client privilege never attached to Boatwright's threat because Boatwright was not seeking legal advice and the threat had no relationship to Rosell's representation of Boatwright. We disagree; the State's approach to determining if this communication was privileged calls for the piecemealing of attorney-client communications and would fundamentally undermine the attorney-client relationship.

The attorney-client privilege under K.S.A. 2016 Supp. 60-426(a) has been distilled into the following elements:

"'(1) Where legal advice is sought (2) from a professional legal advisor in his [or her] capacity as such, (3) communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived. See 8 Wigmore on Evidence § 2292 (McNaughton rev. 1961).'" *State v. Munyon*, 240 Kan. 53, 58, 726 P.2d 1333 (1986) (quoting *State v. Maxwell*, 10 Kan. App. 2d 62, 63, 691 P.2d 1316 [1984]).

Boatwright's communication to Rosell falls squarely within this definition. The record shows that the communication between Boatwright and Rosell occurred during the course of Rosell's representation of Boatwright, specifically during Boatwright's meeting with her to discuss a plea offer. Although Boatwright's comment is jarring in isolation, the expression of such frustrations is not an uncommon occurrence in the course of an attorney-client relationship, "particularly in an adversarial context, and may serve as a springboard" for discussion and attempts to dissuade the client on the part of the attorney. *In re Grand Jury Investigation*, 453 Mass. 453, 458, 902 N.E.2d 929 (2009). In fact, "'[a]bout half of the practice of a decent lawyer is telling would-be clients that they are damned fools and should stop.' *Quoted in* A. Kaufman, Problems in Professional Responsibility (1976)." *McCandless v. Great Atlantic and Pacific Tea Co., Inc.*, 697 F.2d 198, 201-02 (7th Cir. 1983) (attributed to Elihu Root). Thus, Boatwright's threat was privileged, and no exception allowed its admission. The district court's admission of this evidence was in error.

Finally, the State asserts that any error is harmless because the evidence would have been admitted anyway as Boatwright's counsel never objected to the detective's testimony about Rosell's disclosure of Boatwright's threat to kill his ex-fiancée. We disagree. Although Boatwright's counsel did not specifically object to the detective's testimony, in our view counsel's earlier and repeated objections to the admission of the evidence at issue, namely Boatwright's threat to kill his ex-fiancée, is sufficient to

13

preserve the issue, especially since the district court granted Boatwright's counsel a continuing objection to the admissibility and use of Rosell's testimony.

The detective's testimony was entirely derivative of Rosell's testimony and was admissible hearsay only if Rosell's testimony were properly admitted. See *State v. Logsdon*, 304 Kan. 3, 32, 371 P.3d 836 (2016) ("[K.S.A. 2015 Supp. 60-460(a)] allows the admission of an out-of-court statement if the person who made the statement—that is, the declarant—actually testifies during the trial."); K.S.A. 2016 Supp. 60-460 (hearsay); K.S.A. 2016 Supp. 60-426 (attorney-client privilege). Accordingly, the continuing objection applied to the material portions of the detective's testimony. As the State's case was built entirely upon Boatwright's own statement, without the evidence of Boatwright's threat communicated to his attorney, the State has no case.

We reverse Boatwright's conviction and remand for further proceedings consistent with this opinion. The other issues raised by Boatwright in his appeal are moot.